CONCERNED TENANTS ASSOCIATION OF FATHER PANIK VILLAGE, et al., Plaintiffs,

v.

Samuel PIERCE, Secretary of the United States Dept. of Housing and Urban Development, et al., Defendants.

Civ. No. B–87–809 (TFGD).

United States District Court, D. Connecticut.

May 9, 1988.

---

Robert Solomen, Michael O. Sheehan, Jerome N. Frank Legal Services, New Haven, Conn., for plaintiffs.

Barry K. Stevens, Asst. U.S. Atty., Bridgeport, Conn., Frank K. Santoro, Asst. U.S. Atty., New Haven, Conn., for Pierce.

Eric L. Reinken, Edward M. Kweskin, Wofsey, Rosen, Kweskin & Kuriansky, Joseph A. Siciliano, Stamford, Conn., for Craig & BHA.

## RULING ON DEFENDANTS' MOTION TO DISMISS

DALY, Chief Judge.

The Concerned Tenants Association of Father Panik Village, along with thirteen named residents of Father Panik Village, have filed a class action suit in the above-captioned matter on behalf of more than 700 resident families to redress the allegedly dangerous, indecent, and unsanitary living conditions at Father Panik Village, a low-income housing project in Bridgeport, Connecticut. In particular, plaintiffs allege that defendants have failed to repair broken windows, doors, electrical fixtures, appliances, radiators, pipes, showers, stairway railings, floors, walls, and ceilings; that defendants have failed to provide adequate security, including door locks, hallway lighting, and smoke alarms, which have resulted in frequent robberies of the tenants and the use of vacant apartments by drug addicts and drug sellers; and that the hallways and stairs are filled with garbage and refuse, and the apartments are infested with rodents and insects.

The action is brought against Samuel Pierce, the Secretary of the United States Department of Housing and Urban Development ("HUD"), Clarence Craig, the Executive Director of the Bridgeport Housing Authority, and the Bridgeport Housing Authority ("BHA"). Plaintiffs originally filed the action in the Superior Court of the State of Connecticut. Upon the petition of defendant Pierce, the action was removed to this Court pursuant to 28 U.S.C. §§ 1441(b), 1442(a)(1), and 1446 on the grounds that the allegations of plaintiffs' complaint arise in connection with official acts of defendant Pierce and HUD.

On February 4, 1988, defendants Craig and BHA filed a motion to dismiss Counts I, II, III, IV, VII, VIII, and X of plaintiffs'

original complaint. In the meantime, plaintiffs sought and were granted, absent objection, leave to amend their complaint. The amended complaint includes two entirely new counts—one naming defendant Pierce and one naming defendants Craig and BHA—as well as certain clarifications of the original ten counts. Except for the two new counts in the amended complaint,[1] the Court shall construe the motion to dismiss as applying to the amended complaint.

## DISCUSSION

### I. *Enforceable Rights under § 1983*

Plaintiffs' claims in Counts IV and VIII of the amended complaint are brought pursuant to 42 U.S.C. § 1983. Section 1983 itself does not create any substantive rights, but rather establishes a remedial device to enforce rights under the Constitution and federal law. Although § 1983 provides a method of recovery for the violation of rights secured by federal statutes, *Maine v. Thiboutot*, 448 U.S. 1, 7–8, 100 S.Ct. 2502, 2506, 65 L.Ed.2d 555 (1980), not all federal statutes or regulations enacted pursuant thereto create enforceable rights.

The Supreme Court has delineated two exceptions to the general rule that § 1983 provides a remedy for the deprivation of rights secured under federal law. Both exceptions require an inquiry into congressional intent. First, no action under § 1983 shall lie if Congress intended to foreclose private enforcement except by the remedial mechanisms provided in the statute itself. *Smith v. Robinson*, 468 U.S. 992, 1012, 104 S.Ct. 3457, 3468, 82 L.Ed.2d 746 (1984); *Middlesex County Sewage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 20, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981). Second, a plaintiff may not bring a § 1983 action if Congress intended the substantive statute in question merely to state a preference or policy declaration rather than to create enforceable rights in the private party. *Pennhurst State School & Hospital v. Halder-*

---

**1.** As to the new Counts X and XI of the amended complaint, nothing in this ruling shall preclude defendants from filing a motion to dismiss in accordance with the Local and Federal Rules of Civil Procedure.

*man,* 451 U.S. 1, 15, 101 S.Ct. 1531, 1539, 67 L.Ed.2d 694 (1981).

Of particular interest for the resolution of the issues presently before the Court is the Supreme Court's recent decision in *Wright v. Roanoke Redevelopment & Housing Auth.,* 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987). In *Wright,* the Supreme Court held that 42 U.S.C. § 1437a, commonly known as the Brooke Amendment to the U.S. Housing Act ("Housing Act"), conferred rights in tenants enforceable under § 1983. The Brooke Amendment limits the rent that may be charged to low-income tenants of public housing projects to a specific percentage of the tenants' income. 42 U.S.C. § 1437a. HUD's regulations defined "rent" as including a reasonable amount for the use of utilities. The tenants in *Wright* claimed that the public housing authority had overcharged them for utilities, thereby violating the rent restrictions of the Brooke Amendment.

In examining whether the Brooke Amendment and its implementing regulations fell within the *Sea Clammers* or *Pennhurst* exceptions, the Court first noted that no private judicial remedial mechanism could be found in the Brooke Amendment or elsewhere in the Housing Act. 107 S.Ct. at 773. Moreover, HUD's generalized powers to enforce the Brooke Amendment's rent restrictions as well as the administrative grievance procedures provided in 42 U.S.C. § 1437d(k) were insufficient to indicate congressional intent to foreclose enforcement through § 1983. *Id.* at 772–73.

The Court went on to determine that the language of the Brooke Amendment, coupled with HUD's regulations, was sufficiently definite to create an enforceable right. The amendment and the regulations provided a specific mandatory rent limitation including reasonable utility charges, the intent of which was clearly to benefit the tenants of public housing projects. Such language was not a mere policy declaration. The Court concluded, therefore, that the Brooke Amendment and the implementing regulations were enforceable un-

der the standards of *Pennhurst. Id.* at 774–75. *Accord Beckham v. New York City Housing Auth.,* 755 F.2d 1074 (2d Cir.1985).

Plaintiffs herein have brought claims pursuant to § 1983 for violations of various portions of the Housing Act other than the Brooke Amendment. Although *Wright* sheds considerable light on the enforceability of rights under the Housing Act, the task remains for the court to examine those sections relied on by the plaintiffs in light of the standards set forth in *Sea Clammers, Pennhurst,* and *Wright.*

### A. De Facto Demolition

In Count VIII of the amended complaint, plaintiffs allege that defendants BHA and Craig's failure to preserve and maintain vacant units in Father Panik Village in a decent, safe, and sanitary condition has resulted in making the units uninhabitable. Plaintiffs contend that BHA and Craig thereby caused a *de facto* or constructive demolition of those units and that the demolition was not carried out in accordance with requirements set forth in 42 U.S.C. § 1437p and the regulations promulgated pursuant thereto.

Section 1437p establishes specific conditions that must be met before a public housing authority may sell or demolish existing public housing units. It provides that HUD may not approve an application for demolition unless the Secretary has determined that

the project or portion of the project is obsolete as to physical condition, location, or other factors, making it unusable for housing purposes, and no reasonable program of modifications is feasible to return the project or portion of the project to useful life; or in the case of an application proposing the demolition of only a portion of a project, the demolition will help to assure the useful life of the remaining portion of the project....

42 U.S.C. § 1437p(a)(1). Furthermore, HUD may not approve a demolition application unless

(1) the application from the public housing agency has been developed in

consultation with tenants and tenant councils, if any, who will be affected by the demolition or disposition and contains a certification by appropriate local government officials that the proposed activity is consistent with the applicable housing assistance plan;

(2) all tenants to be displaced as a result of the demolition or disposition will be given assistance by the public housing agency and are relocated to other decent, safe, sanitary, and affordable housing, which is, to the maximum extent practicable, housing of their choice, including housing assisted under section 1437f of this title; and

(3) the public housing agency has developed a plan for the provision of an additional decent, safe, sanitary, and affordable dwelling unit for each public housing dwelling unit to be demolished or disposed under such application....

42 U.S.C. § 1437p(b). HUD has issued regulations for the implementation of these requirements. 24 C.F.R. § 970.

In *Edwards v. District of Columbia*, 821 F.2d 651 (D.C.Cir.1987), the District of Columbia Circuit addressed the issue of whether § 1437p creates an enforceable right that may be violated by a *de facto* demolition. Although HUD had not acted upon the defendant's application to demolish certain public housing units, the plaintiff tenants of the project brought an action under § 1983 for infringement of their rights protected by § 1437p. *Id.* at 653. The court in *Edwards* concluded that the language and legislative history of § 1437p did not reflect that Congress intended to create an enforceable right in public housing tenants. Instead, the court held that § 1437p created only the obligation that HUD not approve a demolition application unless the conditions in § 1437p were met. *Id.* at 658–60.

In the wake of *Edwards*, Congress amended § 1437p to include the following section:

A public housing agency shall not take any action to demolish or dispose of a public housing project or a portion of a public housing project without obtaining the approval of the Secretary and satisfying the conditions specified in subsections (a) and (b) of this section.

42 U.S.C. § 1437p(d). The legislative history of the amendment illustrates that the court's interpretation of § 1437p in *Edwards* was at least in part incorrect. According to the House Report, the amendment clarifies the rule that a public housing agency shall not

take any steps toward demolition and disposition without having satisfied the statutory criteria. This provision is intended to correct an erroneous interpretation of the existing statute by the United States Court of Appeals for the D.C. Circuit in *Edwards v. District of Columbia* and shall be fully enforceable by tenants of and applicants for the housing that is threatened.

H.R. Conf. Rep. No. 426, 100th Cong., 1st Sess. (1987), U.S.Code Cong. & Admin. News 1987, pp. 3317, 3458. In light of this amendment and its legislative history, there can be no doubt that Congress intended that § 1437p create enforceable rights.

A question remains, however, as to the scope of these rights and whether a *de facto* demolition implicates the rights protected by § 1437p. Defendants BHA and Craig maintain that the amendment to § 1437p was directed only to that portion of the decision in *Edwards* that concluded that § 1437p created no enforceable rights at all, and not to the discussion of the distinction between *de facto* and actual demolitions. The latter portion, defendants argue, remains intact, and should lead this court to conclude that a *de facto* or constructive demolition does not give rise to an action enforcing § 1437p rights.

The court in *Edwards* held that although § 1437p requires that HUD approve an application for demolition before the actual demolition takes place,[2] the statute does

---

**2.** The three-judge panel split on this point. Chief Judge Wald, writing for the court, concluded that § 1437p only required that actual demolition take place only after HUD approval. *Edwards v. District of Columbia*, 821 F.2d 651, 660 (D.C. Cir.1987). In his concurring opinion,

not prevent a public housing agency from seeking what amounts to a demolition by neglect and a failure to maintain the housing project. *Edwards*, 821 F.2d at 660. The statute, according to the court, does not speak of a duty not to abandon but merely outlines procedural requirements for a demolition, which the court defined to mean "the destruction of structures." *Id.* at 660 n. 12. Therefore, if this aspect of the *Edwards* decision were accepted despite the amendment to § 1437p, the rights of tenants under § 1437p would be limited to enforcing the approval requirements only in cases of actual demolition.

This Court declines to follow the interpretation of § 1437p by the *Edwards* court. First, the dissenting opinion in *Edwards* provides both a more persuasive and better reasoned construction of the rights enforceable under § 1437p. The dissent found nothing in either the statute itself or in its legislative history that supported a distinction between actual and *de facto* demolitions. By enacting § 1437p, Congress intended to prohibit the destruction of public housing projects without HUD approval. Because the result—the unapproved destruction of a housing project—is the same whether done by a wrecking ball and bulldozers or by neglect that renders the units uninhabitable, the requirements of § 1437p should apply to both actual and *de facto* demolitions. To conclude otherwise would allow public housing agencies to evade the law by simply allowing housing projects to fall into decay and disrepair. *Id.* at 669–70 (Will, J. dissenting).

Second, the Court does not accept the narrow reading defendants give the amendment to § 1437p and its legislative history. The amendment was adopted by Congress to correct the misinterpretation of the statute in the *Edwards* decision, and there is no indication that Congress meant to limit its disapproval of *Edwards* in the narrow

fashion that defendants suggest. In fact, the language of the amendment compels a contrary conclusion. The amendment states that a public housing agency "shall not take *any action* to demolish" all or part of a housing project without obtaining HUD approval. 42 U.S.C. § 1437p (emphasis added). Similarly, the conference report noted that the purpose of the amendment was to clarify that a public housing authority shall not "take *any steps* toward demolition" without first meeting the requirements of § 1437p. H.R.Conf.Rep. No. 426, 100th Cong., 1st Sess. (1987) (emphasis added). The use of the words "any action" and "any step" can only be reasonably construed to encompass conduct, including an omission or failure to act, by a public housing agency that would result in the destruction of all or part of a housing project in the sense that the housing units would no longer be habitable. As reflected in the amendment, Congress intended to ensure that tenants could fully enforce compliance with the physical condition, consultation, and relocation requirements of § 1437p. To limit these requirements to actual demolitions would undermine this intent.

■ Neither section 1437p nor the remainder of the Housing Act provides a private enforcement mechanism indicating congressional intention to preempt § 1983 as a remedy. *See Wright*, 107 S.Ct. at 773. Moreover, the language and legislative history of § 1437p is of a sufficiently specific and definite nature to indicate congressional intent to create an enforceable right. Therefore, plaintiffs have stated a claim for which relief may be granted sufficient to overcome a motion to dismiss.

**B.** *Lease Requirements*

Plaintiffs claim in Count IV of the amended complaint that defendants BHA and Craig have breached their duty under

---

Judge Williams suggested that § 1437p did not even require HUD approval of actual demolitions because the statute did not impose a sufficiently clear statutory obligation requiring such approval. *Id.* at 664–65 (Williams, J., concurring). Chief Judge Wald's cogent rebuttal of Judge Williams's position is sufficient to dispel

any doubt that § 1437p at the very least goes so far as to require HUD approval before actual demolition may occur. *Id.* at 660 n. 12. Finally, Judge Will dissented, finding that the requirements of § 1437p applied to both actual and *de facto* demolitions. *Id.* at 669–70 (Will, J., dissenting).

federal law to maintain Father Panik Village in a proper condition. Section 1437d(*l*)(2) of the Housing Act provides that a public housing agency shall use leases that "obligate the public housing agency to maintain the project in a decent, safe, and sanitary condition." 42 U.S.C. § 1437d(*l*)(2).[3]

■ Tenants would have an enforceable right under § 1437d(*l*)(2) and the regulations promulgated thereto to a lease that contains the requirements provided in the statute and the regulations. Plaintiffs do not claim in Count IV that the lease fails to include these obligations. Instead, they argue that defendants' failure to maintain the project in a decent, safe, and sanitary condition is a breach of their duties imposed on them by § 1437d(*l*)(2). A simple reading of the statute, however, indicates that § 1437d(*l*)(2) alone does not create a right enforceable under § 1983 to proper maintenance of the housing project.[4] Therefore, Count IV of the amended complaint does not state a claim upon which relief may be granted.

## II. *Third–Party Beneficiary*

In Count VII of the amended complaint, plaintiffs claim that defendants BHA and Craig have breached the Annual Contributions Contract (ACC) it entered into with HUD. Specifically, plaintiffs allege that defendants BHA and Craig have breached certain provisions of the ACC that require the defendants to maintain Father Panik Village in a proper condition. They assert that as third-party beneficiaries of the ACC, they may enforce its terms and conditions.

The Annual Contributions Contract is an agreement executed by HUD and a local public housing authority pursuant to which HUD disburses federal funds to the public housing authority on the condition that the public housing authority complies with the requirements of the Housing Act and HUD's regulations. *See* 42 U.S.C. §§ 1437c, 1437g; 24 C.F.R. § 911.103. Plaintiffs allege that the ACC contains language requiring that defendants BHA and Craig "at all times operate each Project (1) solely for the purposes of providing decent, safe, and sanitary dwellings ... within the financial reach of Families of Low Income ... (3) in such manner as to achieve the economic well-being of the tenants thereof." Plaintiffs' Memorandum in Opposition, at 14 (quoting Consolidated Annual Contributions Contract § 201).

---

**3.** Plaintiffs further rely on the regulations established pursuant to this section, which require that

[t]he lease shall set forth the PHA's obligations under the lease which shall include the following:
(1) To maintain the premises and the project in decent, safe and sanitary condition;
(2) To comply with requirements of applicable building codes, housing codes, and HUD regulations materially affecting health and safety;
(3) To make necessary repairs to the premises;
(4) To keep project buildings, facilities and common areas, not otherwise assigned to the tenant for maintenance and upkeep, in a clean and safe condition;
(5) To maintain in good and safe working order and condition electrical, plumbing, sanitary, heating, ventilating, and other facilities and appliances, including elevators, supplied or required to be supplied by the PHA....

24 C.F.R. § 966.4(e). HUD's regulations also provide that

[t]he lease shall set forth the rights and obligations of the tenant and the PHA in the event

that the premises are damaged to the extent that conditions are created which are hazardous to life, health, or safety of the occupants and shall provide that:

.　.　.　.　.

(2) The PHA shall be responsible for repair of the unit within a reasonable time: *Provided,* that if the damage was caused by the tenant, tenant's household or guests, the reasonable cost of repairs shall be charged to the tenant;
(3) The PHA shall offer standard alternative accomodation, if available, in circumstances where necessary repairs cannot be made within a reasonable time....

24 C.F.R. § 966.4(h).

**4.** Plaintiffs have not alleged and the Court need not at this juncture consider whether the language of this and other sections of the Housing Act supports an implied warranty of habitability, upon which, if breached, tenants may obtain a federal common law remedy. *See, e.g., Conille v. Secretary of Housing and Urban Development,* 840 F.2d 105, 116–17 (1st Cir.1988); *Techer v. Roberts–Harris,* 83 F.R.D. 124, 128–30 (D.Conn.1979).

■ The first question the Court must resolve is what law governs the third-party beneficiary claim. State law usually controls the interpretation and enforcement of contractual obligations between private parties. However, federal common law applies when an overriding federal interest is implicated, for example, when substantial rights and duties of the United States are at stake in the litigation. *Miree v. DeKalb County,* 433 U.S. 25, 31, 97 S.Ct. 2490, 2494, 53 L.Ed.2d 557 (1977); *Owens v. Haas,* 601 F.2d 1242, 1248 (2d Cir.), *cert. denied,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979). Because the resolution of the issue of plaintiffs' status as a third-party beneficiary requires a uniform rule, because the outcome of this action could directly affect significant obligations of the United States, and because the Secretary of HUD is a party to the action, federal common law must govern the issue.[5] *Price v. Pierce,* 823 F.2d 1114, 1119–20 (7th Cir. 1987), *cert. denied,* — U.S. —, 108 S.Ct. 1222, 99 L.Ed.2d 422 (1988).

■ Federal common law provides that a third party has enforceable rights under a contract that was intended to benefit directly that third party. *Holbrook v. Pitt,* 643 F.2d 1261, 1270 (7th Cir.1981); *Owens,* 601 F.2d at 1250. The analysis of whether plaintiffs are intended beneficiaries or merely incidental beneficiaries with no cognizable rights under the ACC turns on a consideration of the intentions of the parties to the agreement, which is evinced in part in the language and legislative history of the statute pursuant to which the ACC was executed.

The parties rely on the decisions of various courts on this issue, the lack of consensus among which is reflected in a substantial split among the circuits. A careful analysis of these cases illustrates that the split is not as severe as appears at first glance and that the issue can adequately be resolved. First, defendants rely on several cases involving regulatory agreements that can be distinguished from the ACC in question in the instant case. In *Reiner v. West Village Assoc.,* 768 F.2d 31, 32–33 (2d Cir. 1985); *Falzarano v. United States,* 607 F.2d 506, 511 (1st Cir.1979); and *Harlib v. Lynn,* 511 F.2d 51, 55–56 (7th Cir.1975), the courts held that tenants of a housing project were not third-party beneficiaries of an agreement entered into between HUD and project owners pursuant to HUD's mortgage insurance programs under 12 U.S.C. §§ 1715*l* (d)(3) and 1715n. Unlike the ACC, there was no indication that the agreements entered into under the mortgage insurance programs were intended to benefit the tenants of housing projects. The statutory language and legislative history of §§ 1715*l* (d)(3) and 1715n make clear that the mortgage insurance programs were intended to ensure the financial viability of housing projects and thus benefited indirectly a broad group including banks, developers, and builders. *See Shivers v. Landrieu,* 674 F.2d 906, 911 (D.C. Cir.1981). The mere presence of provisions in those agreements regarding rent increases was insufficient to demonstrate the parties' intent to create enforceable obligations to the tenants under the agreements. Given the lack of intention to directly benefit tenants, the tenants were merely incidental beneficiaries and could not bring an action to enforce the mortgage insurance program agreements.

The ACC, which is entered into pursuant to the Housing Act, does exhibit an intention to benefit the tenants directly. The provisions of the ACC make clear that it was executed primarily for the purpose of benefiting the tenants. *Ashton v. Pierce,* 716 F.2d 56, 66 (D.C. Cir.1983), *amended,* 723 F.2d 70 (D.C. Cir.1983); *Holbrook v. Pitt,* 643 F.2d 1261, 1271–72 (7th Cir.1981). The ACC requires that defendants BHA and Craig provide decent, safe, and sanitary housing. Moreover, the language of the Housing Act and its legislative history demonstrate the Congress intended that the regulatory contracts entered into pursuant to the Act were designed to benefit the tenants as a mechanism for ensuring

---

5. Even assuming that state law rather than federal common law applies, the result would be the same, as the analysis under Connecticut law is identical to that under federal common law. *See Stowe v. Smith,* 184 Conn. 194, 196–97, 441 A.2d 81 (1981).

they receive decent and safe housing. *See* 42 U.S.C. § 1437 *et seq.* "Indeed, it is difficult to imagine any purpose for the Contract other than to benefit the tenants of public housing." *Ashton,* 716 F.2d at 66.

Defendants BHA and Craig point to several cases that have held to the contrary. In *Perry v. Housing Auth. of Charleston,* 664 F.2d 1210, 1218 (4th Cir.1981), the Fourth Circuit rejected a third-party beneficiary claim for breach of an ACC on the basis of similar factual allegations as in the instant action. The court in *Perry,* however, without analysis or pertinent discussion, inappropriately relied on those cases involving agreements under HUD's mortgage insurance programs.

Similarly, defendants rely on dicta in a District of Columbia Circuit case that appears to restrict the holdings of earlier decisions of that circuit on the issue of third-party beneficiaries under the ACC. In *Samuels,* the court, although it did not need to resolve the question, indicated that allowing tenants to proceed under a third-party beneficiary theory without a clear indication of congressional intent to provide a remedy for the failure to provide safe and decent housing would be inappropriate.[6] *Samuels v. District of Columbia,* 770 F.2d 184, 201 n. 14 (D.C. Cir.1985). The court in *Samuels* strove to distinguish its earlier opinion in *Ashton,* which found that tenants were intended beneficiaries of the ACC. In *Ashton,* the court concluded that tenants, as third-party beneficiaries of the ACC, could compel HUD to fulfill its obligation under the ACC to monitor local housing authority compliance with regulations regarding lead-based paint. 716 F.2d at 66. The *Samuels* court appears to have concluded that the indication of congressional intent to eliminate lead-based paint was somehow clearer than that of the congressional intention to ensure tenants of public housing receive safe and decent

dwelling places. This Court does not agree with that distinction. The provisions of the ACC along with the language and legislative history of the Housing Act demonstrate the intent to benefit tenants. *See* 42 U.S.C. § 1437. In fact, the *Ashton* court itself noted that the duty to ensure compliance with the lead-free paint regulations was a component of the obligations under the ACC to provide decent, safe, and sanitary housing. *Ashton,* 716 F.2d at 67. *See also Knox Hill Tenant Council v. Washington,* 448 F.2d 1045 (D.C. Cir.1971).

■ The Court finds the *Perry* and *Samuels* cases unpersuasive and declines to follow them. Instead, the Court adopts the reasoning of the Seventh Circuit in *Holbrook* and the District of Columbia Circuit in *Ashton.* Under these two cases, tenants have enforceable rights as intended beneficiaries to obtain compliance with the obligations under the ACC to provide decent and safe housing. *Ashton,* 716 F.2d at 66; *Holbrook,* 643 F.2d at 1271. Plaintiffs herein have therefore stated a claim in Count VII sufficient to withstand a motion to dismiss.

### III. *State Law Claims*

■ Defendants Craig and BHA contend that plaintiffs' state law claims in Counts I, II, III, and XII of the amended complaint should be dismissed because the sole basis for the Court's jurisdiction over those claims is the doctrine of pendent jurisdiction. However, defendants are incorrect in their characterization of the Court's jurisdiction over these claims. Defendant Pierce removed this action from the state court in which plaintiffs had originally filed the action to this Court pursuant to *inter alia* 28 U.S.C. § 1442(a)(1). Section 1442(a)(1) provides that an action commenced in a state court against an officer of the United States or any agency thereof or against any person acting under him for any act under color of that office may be

---

**6.** In *Edwards,* another District of Columbia Circuit case, the tenants on appeal limited their third-party beneficiary claim to enforcing compliance with the requirements of 42 U.S.C. § 1437p. Because the court had determined that tenants had no enforceable rights under

§ 1437p, it similarly rejected the tenant's third-party beneficiary claim. 821 F.2d at 661–62. The court therefore did not address the issue of whether tenants could assert a claim for broader relief under the ACC. *Id.* at 662 n. 14.

removed to the district court for the district in which the state court action is pending. This section not only creates the right of removal but confers subject matter jurisdiction over the entire action to the district court to which the action is removed. *Niagara Mohawk Power Corp. v. Bankers Trust Co. of Albany*, 791 F.2d 242, 244 (2d Cir.1986); *S.S. Silberblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28, 35 (2d Cir.1979).

 A court has pendent jurisdiction over state law claims for which it lacks an independent basis for subject matter jurisdiction if the state law claims arise out of a common nucleus of operative fact with claims over which the court does have an independent basis for jurisdiction. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1965). Such jurisdiction is discretionary, and takes into consideration such factors as judicial economy and the avoidance of unnecessary decisions of state law. *Id.* at 726, 86 S.Ct. at 1139. However, the Court's jurisdiction over plaintiffs' state law claims is not pendent, but rather is based on § 1442(a)(1). Therefore, the Court has an independent basis upon which to assert jurisdiction over the state law claims.

Accordingly, defendants' motion to dismiss is GRANTED as to Count IV of the amended complaint for failure to state a claim upon which relief may be granted. The motion is DENIED as to Counts I, II, III, VII, VIII, and XII of the amended complaint.

SO ORDERED.