780 F.Supp. 511 (1991)
HENRY HORNER MOTHERS GUILD, et al., Plaintiffs,
v.
The CHICAGO HOUSING AUTHORITY, et al., Defendants.
No. 91 C 3316.
United States District Court, N.D. Illinois, E.D.
November 20, 1991.
*512 William P. Wilen, Legal Assistance Foundation of Chicago, Chicago, Ill., for plaintiffs.
James J. Casey, Bradford T. Yaker, Fred J. Posont, Stacey L. Prange (F. Willis Caruso, of counsel), Keck, Mahin & Cate, CHA Legal Dept., Chicago, Ill., for defendants.

MEMORANDUM OPINION AND ORDER
ZAGEL, District Judge.
Plaintiffs filed a five-count complaint against the Chicago Housing Authority ("CHA"), Vincent Lane (as chairman of the CHA), the United States Department of Housing and Urban Development ("HUD"), and Jack Kemp (as the secretary of HUD). Plaintiffs assert Counts I, IV and V of their complaint against defendants CHA and Lane (collectively "the CHA defendants"). The CHA defendants seek dismissal of those counts under Fed.R.Civ.P. 12(b)(6).[1]
Plaintiffs bring Count I pursuant to 42 U.S.C. § 1983, charging the CHA defendants with a violation of plaintiffs' rights under § 1437p of the United States Housing Act ("Housing Act"). 42 U.S.C. § 1441, et seq. Count IV alleges a breach of the Annual Contributions Contract ("ACC") between HUD and the CHA; plaintiffs assert that they are third party beneficiaries of the ACC. Finally, plaintiffs allege in Count V that the CHA defendants have breached their lease agreements with Henry Horner tenants.
For purposes of defendants' 12(b)(6) motion, the court must accept the well pleaded allegations of the complaint as true, and shall draw reasonable inferences in the light most favorable to plaintiff. Bethlehem Steel Corp. v. Bush, 918 F.2d 1323, 1326 (7th Cir.1990); Yeksigian v. Nappi, 900 F.2d 101, 102 (7th Cir.1990). Furthermore, the record is limited to the complaint and defendants may not challenge the allegations of the complaint. Webster v. New Lenox School Dist. No. 122, 917 F.2d 1004, 1005 (7th Cir.1990); Gomez v. Illinois *513 State Bd. of Educ., 811 F.2d 1030, 1039 (7th Cir.1987).[2]

I. HOUSING ACT CLAIM (COUNT I)
The CHA is a public housing authority that administers federally subsidized and assisted low rent housing programs pursuant to the Housing Act. 42 U.S.C. § 1441 et seq. Plaintiffs are a class composed of residents at the Henry Horner Homes and applicants for public housing. Plaintiffs allege that the CHA's failure to maintain the Henry Horner Homes resulted in their substantial deterioration, such that half the units have been vacated and the remaining units exist in a state of perpetual disrepair. Plaintiffs further allege that as a result of the CHA's neglect, the buildings have become health and fire hazards and the unoccupied units have been overrun with vandals, trespassers and drug dealers. According to plaintiffs, this combination of deterioration and vacancy has resulted in a constructive or de facto demolition of the Henry Horner developments.
The Housing Act establishes conditions under which a public housing authority may demolish or dispose of existing public housing units. Section 1437p(d) provides that a public housing agency "shall not take any action to demolish or dispose of a public housing project without obtaining the approval of the Secretary and satisfying the conditions specified in subsections (a) and (b) of this section." 42 U.S.C. § 1437p(d) (1991). Subsection (a) requires a public housing authority to secure the approval of the Secretary of HUD before demolishing or disposing of the development. 42 U.S.C. § 1437p(a). Subsection (b) requires that the public housing authority consult with tenants and tenant councils who will be affected by the demolition or disposition, and to provide assistance and alternative units to any displaced tenants. 42 U.S.C. § 1437p(b).
Plaintiffs contend that because defendants have not satisfied the requirements enumerated in subsections (a) and (b) for demolition or disposal of the Henry Horner developments, their § 1983 claim alleging a violation of their rights under § 1437p(d) states a claim upon which this Court can grant relief. In response, the CHA defendants concede that they have not met the requirements of subsections (a) and (b). They contend, however, that de facto or constructive demolition is not actionable under § 1437p(d) and seek dismissal on those grounds.

A. Actual v. De Facto Demolition
The CHA defendants argue that § 1437p(d) does not cover a public housing agency's omission or failure to act that leads to a state of disrepair of a building or housing project. Under defendants' interpretation, until a public housing agency takes active measures to tear down a public housing project or makes an affirmative decision to demolish a project, a public housing tenant does not possess an enforceable right under § 1437p(d). Not surprisingly, plaintiffs disagree. They contend that the requirements of § 1437p(d) apply to any type of conduct by a housing authority that results in the destruction of all or part of a housing project. Under plaintiffs' reading of the Act, conduct that destroys a project  in the sense that the housing units would not longer be habitable  is governed by § 1437p(d) regardless of whether such conduct is characterized as affirmative conduct or passive neglect.
To resolve this dispute, the Court must decide whether the words "any action" contained in § 1437p(d) can reasonably be construed to encompass an omission or failure to act. In answering this question, the decision in Edwards v. District of Columbia, 821 F.2d 651 (D.C.Cir.1987), is instructive. *514 The Edwards court held that although § 1437p may have created a private cause of action for actual demolition of a public housing development, § 1437p did not create enforceable rights that would be violated by a de facto demolition. Edwards, 821 F.2d at 657-658, 660. Senior District Judge Will, sitting by designation on the Edwards court, dissented. Judge Will stated that "§ 1437p, in order to be meaningful and effective, also prohibits a [public housing authority], acting without prior HUD authorization, from condemning a project to death as effectively as if it were physically demolished by abandoning and neglecting it." Id. at 666.
Congress responded to the circuit court's decision in Edwards by amending § 1437p to include subsection (d). Subsection (d) and its legislative history supplied the congressional intent that Judge Wald, in Edwards, appropriately found lacking when she concluded that the pre-amendment § 1437p did not create an enforceable right that could be violated by a de facto demolition. This subsection clarified that Congress intended that:
no [public housing authority] shall take any steps toward demolition and disposition without having satisfied the statutory criteria. This provision is intended to correct an erroneous interpretation by the United States Court of Appeals for the D.C. Circuit in Edwards v. District of Columbia and shall be fully enforceable by tenants of and applicants of the housing that is threatened. H.R.Conf. Rep. No. 426, 100th Cong., 1st Sess. (1987), reprinted in 1987 U.S.Code Cong. & Admin.News 3317, 3458 (emphasis supplied).
The Court agrees that "in light of this amendment and its legislative history, there can be no doubt that Congress intended that § 1437p create enforceable rights." Concerned Tenants Ass'n of Father Panik Village v. Pierce, 685 F.Supp. 316, 320 (D.Conn.1988). Accord Tinsley v. Kemp, 750 F.Supp. 1001, 1008 (W.D.Mo. 1990). There is some disagreement among the courts, however, regarding the scope of these rights and whether a de facto demolition implicates the rights protected by § 1437p. Since Congress amended § 1437p, two of the three courts to address the issue have interpreted subsection (d) as prohibiting conduct that results in a constructive or de facto demolition of public housing. Compare Tinsley, 750 F.Supp. at 1007-8 and Concerned Tenants, 685 F.Supp. at 321 with Dessin v. Housing Authority of Fort Meyers, No. 90-232, slip op. (M.D.Fla. Sept. 27, 1990).[3]
Defendants urge that subsection (d) be interpreted narrowly, as applying only to plans to tear down or raze a property. See Dessin, No. 90-232, slip op. at 7. According to defendants, a reading of the statute to include de facto demolition would constitute an unwarranted expansion of the statute's language. In light of Congress' rejection of Edwards and concomitant amendment of § 1437p, as well as the language of subsection (d) and its legislative history, the court declines to embrace defendants' narrow reading of § 1437p(d).
Both the language of the statute and the legislative history reveal that § 1437p(d) should be construed more broadly than defendants' interpretation allows. The statute and legislative history prohibit "any action" and "any step" toward demolition of a public housing project. This language is, by its nature, broad; it is crafted to *515 encompass a wide range of conduct on the part of a public housing authority. Indeed, nothing in the statute or legislative history suggests that Congress intended to limit the right conferred in subsection (d) by exempting certain types of conduct. Thus, neither the statute nor legislative history support a distinction between actual and de facto demolition. Concerned Tenants, 685 F.Supp. at 321. "The use of the words `any action' and `any step' can only be reasonably construed to encompass conduct, including an omission or a failure to act, by a public housing agency that would result in the destruction of all or part of a housing project ..." Id.
Defendants' narrow construction of subsection (d) is at odds with Congress' intent in enacting § 1437p: to prohibit the destruction of public housing projects without HUD approval. Id.; Tinsley, 750 F.Supp. at 1007.
Because the result  the unapproved destruction of a housing project  is the same whether done by a wrecking ball and bulldozers or by neglect that renders the units uninhabitable, the requirements of § 1437p should apply to both actual and de facto demolitions. To conclude otherwise would allow public housing agencies to evade the law by simply allowing housing projects to fall into decay and disrepair.
Concerned Tenants, 685 F.Supp. at 321.
Moreover, the language of the statute is not limited to demolition. The Act prohibits "any action to demolish or dispose of a housing project or a portion of a housing project ..." 42 U.S.C. § 1437p(d). The use of this language further supports a less narrow construction of the subsection than that urged by defendants. Congress not only prohibited demolition, but also steps taken to otherwise dispose of public housing units. For example, under subsection (d) a housing authority cannot eliminate public housing units by selling the buildigs or converting them to another use without first obtaining HUD approval and satisfying the conditions outlined in § 1437p(d).
In sum, the Court finds that § 1437p(d) creates an enforceable right against conduct that results in the de facto demolition of public housing. In so doing, the Court does not reach the far more difficult problem of what would have to be proved to show de facto demolition. Plaintiffs have stated a claim for which relief may be granted sufficient to overcome a motion to dismiss.

II. BREACH OF THE ANNUAL CONTRIBUTIONS CONTRACT (COUNT IV)
Defendants CHA and Lane also argue that Count IV of the complaint, alleging breach of the Annual Contributions Contract ("ACC"), also fails to state a claim. The ACC is a contract under which the CHA agrees to maintain public housing in a safe and sanitary condition in exchange for HUD funds. 42 U.S.C. §§ 1437c, 1437g. Defendants contend that plaintiffs are not intended beneficiaries under the ACC. Therefore, defendants reason, plaintiffs do not have standing to assert a breach of contract claim under the ACC.
The Seventh Circuit has held that public housing tenants can be considered third party beneficiaries for certain types of contracts between HUD and public housing authorities. Holbrook v. Pitt, 643 F.2d 1261 (7th Cir.1981). Other courts have held that the ACC, in particular, confers third party beneficiary status on public housing tenants. See Ashton v. Pierce, 716 F.2d 56, 66 (D.C.Cir.1983), modified on other grounds, 723 F.2d 70 (D.C.Cir.1983); Knox Hill Tenant Council v. Washington, 448 F.2d 1045, 1057-58 (D.C.Cir.1971); Tinsley, 750 F.Supp. at 1012; Concerned Tenants, 685 F.Supp. at 324. Moreover, the Holbrook court stated that a third party may have enforceable rights under a contract if the contract were made for the third party's direct benefit. Holbrook, 643 F.2d at 1270.[4]
*516 Under the standard enunciated in Holbrook, plaintiffs qualify as third party beneficiaries of the ACC. The ACC calls for the CHA to develop and administer each housing development "to achieve the well-being and advancement of the tenants thereof." (Complaint ¶ 17, citing ACC § 101.) It also requires the CHA "at all times [to] operate each Project ... solely for the purpose of providing decent, safe and sanitary dwellings ... within the financial reach of Families of Low Income." (Complaint ¶ 18, citing ACC § 201). The terms of the contract thus communicate that the purpose of the contract is to benefit public housing tenants, as well as low-income families generally, who are applicants and potential applicants of public housing.
Defendants' motion to dismiss Count IV is denied.

III. SUPPLEMENTAL JURISDICTION OF STATE LAW CONTRACT CLAIMS (COUNT V)
Finally, defendants assert that plaintiffs' state law contract claims should be dismissed because the federal claims should be dismissed. Alternatively, defendant request that the court sever the state law claims from this action. The claims in Count V, alleging breach of the leases between CHA and plaintiffs, are closely related to the claims in this case that are within the original jurisdiction of this Court. Hence the state law claims and the federal question claims "form part of the same case or controversy." 28 U.S.C. § 1367(a) (1991). Since defendant's 12(b)(6) motion fails, it is unnecessary to dismiss or sever the state law claims because they are within the supplemental jurisdiction of the Court.
NOTES
[1] HUD and Jack Kemp have answered the complaint.
[2] Defendants attached an affidavit of George Phillips, a former housing manager of the Henry Horner developments, as an exhibit to their reply memorandum. The affidavit states that 102 tenants have moved into the Horner developments since January 1991. Plaintiffs assert that because defendants have presented matters outside of the pleadings the court should treat this 12(b)(6) motion as a motion for summary judgment. The Court will not consider the Phillips affidavit in ruling on defendants' motion because the affidavit does not, as a whole, refute the allegations of the complaint. Therefore, defendants' 12(b)(6) motion will not be treated as a motion for summary judgment.
[3] The court in Dessin dismissed the plaintiffs' Housing Act claim on ripeness grounds. Dessin, No. 90-232, slip op. at 5. Nevertheless, the court went on to express its disagreement with Tinsley and Concerned Tenants, which interpreted § 1437p(d) to allow a cause of action by current or potential tenants when a housing authority has constructively demolished public housing by failure to maintain. The passages of Dessin discussing the validity of an action for de facto demolition under subsection (d) are not essential to the court's decision, which rested on the ripeness doctrine. The court's general observations about subsection (d) are therefore dicta, which is "not entitled to the full weight usually given judicial decisions ..." Matter of Cassidy, 892 F.2d 637, 640 (7th Cir.1990) (citing United States v. Crawley, 837 F.2d 291 (7th Cir. 1988)). Even if the court's conclusions about subsection (d) were integral to the analytical foundation of its holding, this Court would decline to follow the Dessin court's interpretation of § 1437p(d) for the reasons stated in this opinion.
[4] Federal common law governs plaintiffs' third party beneficiary claims because "the outcome of this action could directly affect significant obligations of the United States." Concern Tenants, 685 F.Supp. at 322. Accord Holbrook, 643 F.2d at 1270 n. 16.