Marlene ARISTIL, individually and as parent and natural guardian for John D. Wilson, Plaintiffs,

v.

The HOUSING AUTHORITY OF THE CITY OF TAMPA, FLORIDA, a political subdivision of the State of Florida, Defendant.

No. 99–22–CIV–T–17F.

United States District Court, M.D. Florida, Tampa Division.

June 8, 1999.

Earl M. Johnson, Jr., Earl M. Johnson, Jr., P.A., Jacksonville, FL, Paul S. Kimsey, Paul S. Kimsey, P.A., Tampa, FL, for plaintiffs.

Alan D. Stewart, Butler, Burnette & Pappas, Tampa, FL, J. Frazier Carraway, Salem, Saxon & Nielsen, P.A., Tampa, FL, for defendant.

## ORDER ON DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE

KOVACHEVICH, Chief Judge.

THIS CAUSE is before the Court on Defendant's, The Housing Authority of the City of Tampa, Florida's [hereinafter "Housing Authority"], Motion to Dismiss and Strike Plaintiffs' Complaint, (Dkt.12), filed on March 17, 1999, and Plaintiffs', Marlene Aristil's and John D. Wilson's, response thereto, (Dkt.15), filed on April 26, 1999.

### STANDARD OF REVIEW

A district court should not dismiss a complaint unless it appears, "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). To survive a motion to dismiss, a plaintiff may not merely "label" his or her claims. See Blumel v. Mylander, 919 F.Supp. 423, 425 (M.D.Fla.1996). At a minimum, the Federal Rules of Civil Procedure require a "short and plain statement of the claim" that "will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." See Conley, 355 U.S. at 47, 78 S.Ct. 99 (quoting Fed.R.Civ.P. 8(a)(2)).

In deciding a motion to dismiss, the court may only examine the four corners of the complaint. See Rickman v. Precisionaire, Inc., 902 F.Supp. 232, 233 (M.D.Fla.1995). "The threshold sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low." Ancata v. Prison Health Serv., Inc., 769 F.2d 700, 703 (11th Cir.1985) (citation omitted).

In addition, a court must accept the plaintiff's well pled facts as true and construe the complaint in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Howry v. Nisus, Inc., 910 F.Supp. 576 (M.D.Fla.1995). However, when on the basis of a dispositive issue of law, no construction of the factual allegations of the complaint will support the cause of action, dismissal of the complaint is appropriate. See Executive 100, Inc. v. Martin County, 922 F.2d 1536 (11th Cir. 1991).

When deciding a motion to strike, a court must look to Federal Rule of Civil Procedure 12(f). Federal Rule of Civil Procedure 12(f) provides that upon motion by a party or upon the court's initiative at any time, the court may order stricken from any pleading any "redundant, immaterial, impertinent, or scandalous matter." A motion to strike will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties. See Poston v. American President Lines, Ltd., 452 F.Supp. 568, 570 (S.D.Fla.1978) (citing Augustus v. Board of Public Instruction, 306 F.2d 862 (5th Cir.1962)). Federal Rule of Civil Procedure 12(f) entitled "Motion to Strike" plainly and clearly states that a motion to strike may be filed "upon motion by a party within 20 days after service of the pleading upon the party."

### BACKGROUND

Plaintiffs filed this cause of action against the Housing Authority on January 5, 1999. (Dkt.1). Plaintiffs' Complaint asserts that Plaintiffs have resided in a College Hill apartment since approximately November of 1996. College Hill is a housing project which is owned and operated by the Housing Authority. Plaintiff Aristil has a leasehold interest in a College Hill apartment which was acquired through a lease agreement executed between Plaintiff Aristil and the Housing Authority.

Upon entering the College Hill apartment, Plaintiff Aristil noticed chipping and

peeling paint. Plaintiff Aristil immediately complained to the Housing Authority. When the Housing Authority failed to take action to cure the paint problem complained of, Plaintiff Aristil continued to complain to the Housing Authority. The Housing Authority took no action to cure the paint problem in Plaintiffs' College Hill apartment.

Plaintiff Aristil is an adult and is the natural birth mother of Plaintiff Wilson, a minor who was born on January 23, 1995. Plaintiff Wilson was born through a normal delivery and had a normal APGAR rating after birth. Plaintiff Wilson was diagnosed with asthma at approximately one (1) year of age. Up until this diagnosis, Plaintiff Wilson developed normally with no significant medical problems. Plaintiff Wilson's behavior, soon after becoming a "mobile toddler," began to change. Plaintiff Wilson began to have "uncharacteristic tantrums and fits" and began to act in a "hyper and easily excitable" fashion. Soon after this change in behavior, Plaintiff Wilson's learning and speech progression appeared to stop.

Plaintiff Wilson has been diagnosed by a physician as suffering from lead poisoning and at the time of diagnosis had a blood lead value equal to or greater than 10 ug/dL. Once Plaintiff Wilson was diagnosed as suffering from lead poisoning, Plaintiff Aristil informed the Housing Authority of Plaintiff Wilson's condition. Upon receiving information concerning Plaintiff Wilson's condition, the Housing Authority failed to take action to cure the lead-based paint hazard in Plaintiffs' College Hill apartment.

Count I of Plaintiffs' Complaint alleges a violation of the Lead–Based Paint Poisoning Prevention Act of 1971 [hereinafter "LPPPA"], 42. U.S.C. § 4822, and is brought pursuant to 42 U.S.C § 1983. Plaintiffs state that the Housing Authority has adopted or acquiesced in a policy or practice of failing to respond, notify, inspect, and eliminate lead-based paint haz-

ards at College Hill and has callously and recklessly disregarded Plaintiffs' rights.

Count II of Plaintiffs' Complaint alleges a violation of the United States Housing Act [hereinafter USHA], 42 U.S.C. § 1437d(k), and is brought pursuant to 42 U.S.C. § 1983. Plaintiffs state that the Housing Authority violated the USHA by failing to make Plaintiffs aware of and provide Plaintiffs with grievance procedures regarding lead-based paint hazards at College Hill.

Count III of Plaintiffs' Complaint alleges that Plaintiffs are intended third party beneficiaries of the Annual Contributions Contract [hereinafter "ACC"] between the Department of Housing and Urban Development [hereinafter "HUD"] and the Housing Authority. Plaintiffs allege that the Housing Authority breached the ACC by failing to provide "safe and decent" housing to Plaintiffs.

### *DISCUSSION*

#### *I. Counts I and II*

According to the Housing Authority, Counts I and II of Plaintiffs' Complaint should be dismissed because Plaintiffs have failed to state a claim upon which relief may be granted. The Housing Authority states that Plaintiffs' claims do not sufficiently cite regulations and do not sufficiently define the rights upon which Plaintiffs' claims are based. The Housing Authority asserts that because Plaintiffs do not sufficiently define the rights upon which Plaintiffs' claims are based, Plaintiffs cannot pursue a claim under 42 U.S.C. § 1983.

■ Section 1983 may be used to file a cause of action against a state agent who has violated a federal statute. *See Wright v. City of Roanoke Redevelopment and Housing Authority,* 479 U.S. 418, 423, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987); *Maine v. Thiboutot,* 448 U.S. 1, 4, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). The Supreme Court has determined when a cause of action under 42 U.S.C. § 1983 may lie and stated

that section 1983 is available to enforce a federal statute allegedly violated by a state agent in all but two (2) circumstances. *See id.* The Supreme Court stated that where "Congress has foreclosed ... enforcement of the statute in the enactment itself and where the statute did not create enforceable rights, privileges, or immunities within the meaning of § 1983" a cause of action under section 1983 does not exist. *See id.* "If there is a state deprivation of a 'right' secured by a federal statute, § 1983 provides a remedial cause of action unless the state actor demonstrates by express provision or other specific evidence from the statute itself that Congress intended to foreclose such private enforcement." *See id.*

■ The Supreme Court clarified the criteria for determining what type of "rights" are enforceable under section 1983 and stated that "section 1983 speaks in terms of 'rights, privileges, or immunities,' not violations of federal law." *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 105, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989). Whether an enforceable right exists under section 1983 depends on whether the federal statute was intended to benefit the putative plaintiff and if so whether the federal statute creates a binding obligation on the governmental unit. *See Simmons v. Charleston Housing Authority*, 881 F.Supp. 225, 229 (S.D.W.Va.1995).

■ In the case at hand, the Court must initially determine whether an enforceable right exists under section 1983. *See id.* To determine whether an enforceable right exists under section 1983 the Court must determine whether the USHA and the LPPPA are intended to benefit Plaintiffs. *See id.* The language contained in the USHA states that "[i]t is the policy of the United States to promote the general welfare of the Nation by employing its funds ... to assist the several states ... to remedy the unsafe and unsanitary housing conditions and the acute shortage of decent, safe, and sanitary dwellings for fami-

lies of low income...." 42 U.S.C. 1437; *see also Perry v. Housing Authority of the City of Charleston*, 664 F.2d 1210, 1213 (4th Cir.1981) (stating that the USHA was intended to benefit low income housing residents). The language contained in the LPPPA directs a housing authority to establish procedures that will "eliminate as far as practicable the hazards of lead-based paint poisoning [and directs that] [s]uch procedures shall ... at a minimum provide for (1) appropriate measures to eliminate as far as practicable immediate hazards due to the presence of a paint which may contain lead and to which children may be exposed...." 42 U.S.C. § 4822. A housing authority is also required to provide procedures for the inspection and correction of lead-based paint hazards. *See* 24 C.F.R. § 965.704. After considering the language contained in the USHA and the LPPPA, the Court finds that the language contained in the USHA and the LPPPA evidences the requisite statutory intent to benefit low income housing residents that is necessary to claim a right enforceable under section 1983.

■ The Court must next determine whether the LPPPA and the USHA create binding obligations to eliminate lead-based paint hazards with respect to governmental entities. *See Simmons*, 881 F.Supp. at 230. In *Perry*, 664 F.2d at 1213, the Fourth Circuit found that the USHA was intended to benefit both low income housing residents and individual states. The Fourth Circuit found that the LPPPA intended to benefit low income residents and states because the LPPPA specifically directs the secretary of HUD to "establish procedures to eliminate as far as practicable the hazards of lead-based paint poisoning with respect to any existing housing which may present such hazards...." *See id.* This Court is in complete agreement with the Fourth Circuit's analysis of this issue. The USHA and the LPPPA are intended to benefit both low income housing residents and individual states, as evi-

dence by their statutory language. Therefore, after due consideration, this Court finds that the LPPPA and the USHA create binding obligations on governmental entities that are sufficient to create a right under section 1983.

The next step of the Court's analysis involves determining whether the Court has the power to enforce the right allegedly violated by the Housing Authority. *See Wright,* 479 U.S. at 431, 107 S.Ct. 766. In deciding whether the Court has power to enforce the right allegedly violated, the Court notes that the Housing Authority has admitted the existence of case law allowing a section 1983 claim to be brought for noncompliance with the USHA and the LPPPA. *See e.g. Simmons,* 881 F.Supp. at 230; *Hurt v. Philadelphia Housing Authority,* 806 F.Supp. 515, 522–25 (E.D.Pa. 1992). The Housing Authority, however, has attempted to distinguish these cases allowing a section 1983 claim from the case at hand. The Housing Authority asserts that Plaintiffs, in the present action, have failed to specifically cite to provisions contained within the USHA and the LPPPA which grant Plaintiffs a right of action under section 1983. The Housing Authority asserts that Plaintiffs are required to cite specific provisions of the USHA and the LPPPA before an enforceable "right" exists under section 1983 and because Plaintiffs, according to the Housing Authority, have not specifically cited to provisions of the USHA and the LPPPA no enforceable right exists under section 1983.

■ After considering the facts contained within the four corners of Plaintiffs' Complaint, the Court finds that Plaintiffs have sufficiently stated and cited to provisions of the USHA and the LPPPA in order to establish an enforceable right under 42 U.S.C. § 1983. Plaintiffs cite, in relevant part, to 42 U.S.C. § 4801, *et. seq.,* 42 U.S.C. § 4822, and 42 U.S.C. § 1437d(k). The cites provided by Plaintiffs establish specific requirements for compliance with the USHA and the LPPPA. Section 1437d(k), in pertinent part, requires each public housing agency receiving federal assistance to implement a grievance procedure which will provide tenants with "specific grounds [to proceed against] any adverse public housing agency action ... the opportunity for a hearing ... the opportunity to examine documents or records or regulation related to the proposed action ... [the right] to be represented by another person ... [the right] to ask questions of witnesses and have others make statements on their behalf ... [and the right] to receive a written decision by the public housing agency on the proposed action." 42 U.S.C. § 1437d(k). The LPPPA also requires "risk assessments, inspections, interim controls, and abatement of lead-based paint hazards" at all low income housing developments. 42 U.S.C. § 4822.

In the present action, the Court notes that Plaintiffs have alleged that the Housing Authority has "failed and refused to notify tenants and [has failed] to inspect and eliminate the poisonous lead-based paint ... which led to the [Housing Authority's] widespread, systematic, and continuous practice of failing to notify, inspect, and eliminate lead-based paint hazards at College Hill." (Dkt.1). Plaintiffs also allege that the Housing Authority failed to make grievance procedures available to Plaintiffs which violated the Housing Authority's obligations, as established in 42 U.S.C. § 4822, 42 U.S.C. § 4801, *et. seq.,* and 42 U.S.C. § 1437d(k).

It is under the requirements of 42 U.S.C. § 4822, 42 U.S.C. § 4801, *et. seq.,* and 42 U.S.C. § 1437d(k) that Plaintiffs have alleged a "right" under section 1983. Plaintiffs allege that the Housing Authority has not complied with the requirements set out in the USHA and the LPPPA. The requirements set out by the USHA and the LPPPA are specific in nature and sufficient to create a "right" enforceable under section 1983. Therefore, the Housing Authority's Motion to Dismiss Counts I

and II of Plaintiffs' Complaint will not be granted.

## II. Count III

The Housing Authority asserts that Count III of Plaintiffs' Complaint should be dismissed because Plaintiffs lack standing to assert a claim for breach of contract. The Housing Authority states that Plaintiffs should not be permitted to bring a cause of action based on the ACC because Plaintiffs are merely an incidental beneficiary.

■ In deciding whether Plaintiffs are an incidental beneficiary of the ACC the Court must determine whether state or federal common law applies. *See Miree v. DeKalb County*, 433 U.S. 25, 29, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977). The Supreme Court of the United States has held that "federal common law may govern ... where a uniform national rule is necessary to further the interests of the federal government." *Id.* The Supreme Court determined that state law will control over federal common law where "the litigation raises no questions regarding the liability of the United States or the responsibilities of the United States under contracts." *See id.* Therefore, where the liability or the responsibility of the United States is involved in the cause of action asserted, federal common law will control. *See id.*

■ In the case at hand, the USHA authorizes HUD to enter into an ACC with a public housing authority. *See* 42 U.S.C. § 1437. Since HUD will always be a party to the ACC, the United States will always be involved in a claim based on the ACC. *See id.* As a claim based on an ACC will always involve the United States, the United States has a definite interest in requiring a uniform rule as to the status of a third party beneficiary plaintiff. *See Price v. Pierce*, 823 F.2d 1114, 1121–23 (7th Cir. 1987); *Holbrook v. Pitt*, 643 F.2d 1261, 1269–73 (7th Cir.1981); *Concerned Tenants Ass'n of Father Panik Village v. Pierce*, 685 F.Supp. 316, 318–19 (D.Conn. 1988); *Gonzalez v. St. Margaret's House*

*Housing Dev. Fund*, 620 F.Supp. 806, 809–10 (S.D.N.Y.1985); *Concerned Tenants Ass'n v. Indian Trails Apartments*, 496 F.Supp. 522, 528 (N.D.Ill.1980); *Miree v. DeKalb County*, 433 U.S. 25, 29, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977). As the United States has a definite interest in requiring a uniform rule as to the status of third party beneficiaries, the Court finds that federal common law governs the issue of whether Plaintiffs may bring a suit as a third party beneficiary of the ACC.

■ Under federal common law, an individual who is not a party to an ACC may have enforceable rights under the ACC if "the contract was made for his [or her] direct benefit" or if he or she is an intended beneficiary of the contract. *See Holbrook*, 643 F.2d at 1270; *Crumady v. Joachim Hendrik Fisser*, 358 U.S. 423, 428, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959). When determining whether a plaintiff is an intended beneficiary of an ACC, the court must consider the intent of the parties to the contract, "which is evinced in part in the language and legislative history pursuant to which the ACC was executed." *See Concerned Tenants Ass'n of Father Panik Village*, 685 F.Supp. at 322. While some courts have found low income housing residents to be intended beneficiaries of an ACC, other courts have not. *See Falzarano v. United States*, 607 F.2d 506, 511 (1st Cir.1979) (stating mere incidental beneficiary relationship exists); *Roberts v. Cameron–Brown Co.*, 556 F.2d 356 (5th Cir. 1977) (finding mere incidental beneficiary). *But see Simmons v. Charleston Housing Authority*, 881 F.Supp. 225, 229 (S.D.W.Va.1995).

In the case at hand, Plaintiffs' claims as an intended beneficiary are particularly strong because Plaintiffs have alleged a violation of 42 U.S.C. § 1437d(k). Section 1437d(k) requires housing authorities to establish grievance procedures to give tenants of low income housing a right to procedural protection. *See* 42 U.S.C. § 1437d(k). Section 1437d(k) also requires that grievance procedures be made avail-

able to low income housing residents. *See id.* The LPPPA directs housing authorities to implement procedures which will "eliminate as far as practicable immediate hazards due to the presence of paint which may contain lead and to which children may be exposed...." *See* 42 U.S.C. § 4822. Additionally, sections three (3) and four (4) of the ACC, (Dkt. 12, exhibit A), state that the mission of HUD in entering the ACC is to provide "decent, safe, and sanitary housing to eligible families in accordance with the ACC" and that the mission of the Housing Authority is "solely for the purpose of providing decent, safe, and sanitary housing for eligible families in a manner that promotes ... the economic and social well-being of the tenants." (Dkt. 12, exhibit A).

However, sections three (3) and four (4) of the ACC are not the only sections pertinent to the Court's analysis. Section twenty-one (21) of the ACC explicitly states that "[e]xcept as to bondholders ... nothing in this ACC shall be construed as creating any right of any third party to enforce any provision of the ACC or to assert any claim against HUD or the [Housing Authority]." (Dkt. 12, exhibit A). Therefore, after considering the legislative history and the language of the LPPPA, the USHA, and the ACC, the Court finds that Plaintiffs, in this instance, were not intended beneficiaries of the ACC entered between the Housing Authority and HUD. The ACC expressly provides that no rights are created in any person as a third party beneficiary. Accordingly, Plaintiffs do not have standing to assert the third party beneficiary claims contained in Count III of Plaintiffs' Complaint.

### III. Motion to Strike

#### A. Punitive Damages

The Housing Authority asserts that Plaintiffs' demand for punitive damages must be stricken as to Counts I and II because 42 U.S.C. § 1983 does not permit recovery of punitive damages against a municipal agency. Plaintiffs respond to the Housing Authority's Motion to Strike by conceding that punitive damages are not recoverable against a governmental entity under section 1983. Therefore, the Court will strike Plaintiffs' claims for punitive damages from Counts I and II of Plaintiffs' Complaint.

As Count III of Plaintiffs' Complaint will be dismissed, it is not necessary for the Court to address the Housing Authority's Motion to Strike punitive damages from Count III.

#### B. Attorney's Fees

The Housing Authority asserts that an award of attorney's fees is not warranted under Counts I and II because Counts I and II are dismissible. The Housing Authority relies on arguments made in connection with the Housing Authority's Motion to Dismiss and states that because Plaintiffs have not asserted a claim that is sufficiently specific or definite to withstand a motion to dismiss, Plaintiffs' request for attorney's fees should be stricken. However, as the Court has found that Counts I and II are not dismissible pursuant to Federal Rule of Civil Procedure 12(b)(6), the Housing Authority's arguments are without merit. Counts I and II are not "redundant, immaterial, impertinent, or scandalous," and therefore, will not be stricken.

As Count III will be dismissed it is not necessary for the Court to address the Housing Authority's Motion to Strike, as to Count III. Accordingly, it is

**ORDERED** that Defendant's Motion to Dismiss, (Dkt.12), be **denied,** as to Counts I and II, and **granted** with prejudice, as to Count III; and Defendant's Motion to Strike, (Dkt.12), be **denied,** as to Plaintiffs' request for attorney's fees in Counts I and II, and **granted,** as to Plaintiffs' request for punitive damages in Counts I and II.