IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 26, 2009

No. 07-31138

Charles R. Fulbruge III
Clerk

YOLANDA ANDERSON; GILDA BURBANK; ALLEN HARRIS; ODESSIA
LEWIS; EMELDA MAY; SYLVIA MOTEN; HILDA JOHNSON; CYNTHIA
BELL; JUDITH WATSON; GLORIA WILLIAMS; MARY ANN WRIGHT;
LINDA DEGRUY

Plaintiffs - Appellants

v.

ALPHONSO JACKSON, SECRETARY, UNITED STATES DEPARTMENT
OF HOUSING AND URBAN DEVELOPMENT; UNITED STATES
DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; HOUSING
AUTHORITY OF NEW ORLEANS; C DONALD BABERS, Board of
Commissioners, Housing Authority of New Orleans; WILLIAM C THORSON,
Executive Administrator Appointing Authority Housing Authority of New
Orleans and each individual defendant in his official capacity

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana

Before WIENER, GARZA, and DeMOSS, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Plaintiff-appellants, a group of displaced New Orleans public housing
residents (the "Residents"), appeal the district court's dismissal of their claims
arising under 42 U.S.C. § 1437p and denial of their motion for a preliminary
injunction. Finding no error, we affirm.

I

Prior to Hurricane Katrina, the Housing Authority of New Orleans ("HANO") planned to demolish and redevelop four deteriorated public housing developments: B.W. Cooper, C.J. Peete, St. Bernard, and Lafitte (collectively, "the Big Four"). After the Big Four suffered severe damage from Katrina, HANO proceeded with the plan for eventual demolition. As required by the U.S. Housing Act of 1937, 42 U.S.C. § 1437p, HANO submitted an application to the U.S. Department of Housing and Urban Development ("HUD") showing that the demolition plan met the statutory criteria.[1] HANO certified that it would provide comparable housing to the affected residents and would also cover

---

[1] 1437p provides, in relevant part:

(a) Applications for demolition and disposition. [U]pon receiving an application by a public housing agency for authorization . . . to demolish or dispose of a public housing project . . . the Secretary shall approve the application, if the public housing agency certifies–

  (1) in the case of--
   (A) an application proposing demolition of a public housing project or a portion of a public housing project, that--
    (i) the project or portion of the public housing project is obsolete as to physical condition, location, or other factors, making it unsuitable for housing purposes; and
    (ii) no reasonable program of modifications is cost-effective to return the public housing project or portion of the project to useful life;
   . . .
  (4) that the public housing agency--
   (A) will notify each family residing in a project subject to demolition or disposition 90 days prior to the displacement date, except in cases of imminent threat to health or safety, consistent with any guidelines issued by the Secretary governing such notifications, that--
    (i) the public housing project will be demolished or disposed of;
    (ii) the demolition of the building in which the family resides will not commence until each resident of the building is relocated; and
    (iii) each family displaced by such action will be offered comparable housing--
      (I) that meets housing quality standards;
      (II) that is located in an area that is generally not less desirable than the location of the displaced person's housing; []
   . . .
   (B) will provide for the payment of the actual and reasonable relocation expenses of each resident to be displaced[.]
   . . .

relocation expenses and counseling. To alert residents to the demolition and redevelopment plans, HANO mailed two notice letters to each affected resident. HANO published informational ads regarding the proposed demolition in several newspapers in Texas and Louisiana. Numerous meetings were held, which the residents were invited to attend in order to receive information, ask questions, and offer comments. Comments from residents were also solicited through the mail and via the HANO website. Over 200 people, including at least 116 displaced residents, attended the resident consultation meetings in November and December of 2006, and around 500 people attended outreach meetings in areas outside of New Orleans in March 2007.

In September 2007 HUD approved HANO's application, finding that all of the statutory requirements were met. The Big Four had numerous storm-related and pre-existing conditions rendering the developments obsolete, dilapidated, and unsuitable for housing purposes, including: damaged and unsafe utility distribution networks, water leakages, windows that failed to meet hurricane-resistant design standards, building code violations, pipe corrosion, mold and water damage, exterior shell damage, and ruined flooring. The costs for rehabilitating the properties substantially exceeded the amount required to justify demolition. HUD detailed its reasons for approving the application in a 31-page opinion.

The Residents filed this lawsuit in June 2006, prior to HUD's approval of the demolition plan. They alleged that HANO and HUD's failure to repair and reopen the Big Four violated the Fair Housing Act (42 U.S.C. § 3608), the HANO lease agreements, the Louisiana Civil Code, and the Fifth and Fourteenth Amendments of the U.S. Constitution. They also alleged that HANO and HUD violated U.S. Housing Act of 1937 (42 U.S.C. § 1437p), enforceable through 42 U.S.C. § 1983 against HANO and through § 702 of the Administrative Procedures Act ("APA") against HUD. The Residents asked the district court to

enjoin the demolition, compel repair and re-occupancy of the units, and award them monetary damages for economic loss and emotional distress. The district court denied their first motion for a preliminary injunction in February 2007, finding no irreparable harm because the Residents had an adequate remedy at law. The district court also granted summary judgment for HANO and HUD on the § 1437p claims, finding that § 1437p did not create federal rights enforceable through 42 U.S.C. § 1983 for constructive eviction and that any actual eviction claims were unripe because HUD had not yet approved HANO's application. In July 2007, the district court certified a class to pursue claims related to the administration of the voucher program (which provided housing for displaced residents after Hurricane Katrina and during the demolition process), and dismissed all remaining claims.

Five weeks after HUD approved HANO's application, the Residents again moved for a temporary restraining order and/or preliminary injunction to stop demolition. They also moved to amend their complaint to state an actual eviction claim under § 1437p. The district court granted the Residents' motion to amend their complaint, but denied their request for a temporary restraining order and/or preliminary injunction. In the same order, the district court dismissed the § 1437p actual eviction claims, finding that this provision did not create a private right of action against HANO or HUD. The Residents then moved this Court for temporary injunctive relief pending appeal and to expedite the appeal, both of which we denied. Demolition began in June 2008. As of this writing, three of the Big Four developments have been totally razed, and demolition of the fourth is underway. To provide interim housing during the demolition and redevelopment process, 621 units remain open in Lafitte.

The Residents appeal the dismissal of their § 1437p claims against HANO and HUD, and the denial of a preliminary injunction to halt the demolition.

II

A dismissal of a § 1983 claim for lack of an enforceable federal right is analogous to a dismissal for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6). See Day v. Apoliona, 496 F.3d 1027, 1030 (9th Cir. 2007); see also United States v. Stanley, 483 U.S. 669, 691 n.7 (1987). Therefore, as with a Rule 12(b)(6) dismissal, we review the district court's dismissal of the § 1437p claims de novo. See Nationwide Bi-Weekly Admin., Inc., v. Belo Corp., 512 F.3d 137, 140 (5th Cir. 2007).

We review the district court's decision to grant or deny a preliminary injunction for abuse of discretion, Walgreen Co. v. Hood, 275 F.3d 475, 477 (5th Cir. 2001), but a decision based on erroneous legal principles is reviewed de novo. Speaks v. Kruse, 445 F.3d 396, 399 (5th Cir. 2006). Only under "extraordinary circumstances" will we reverse the denial of a preliminary injunction. White v. Carlucci, 862 F.2d 1209, 1211 (5th Cir. 1989).

## III

## A

The Residents assert that the district court erred in dismissing their § 1983 claim against HANO, which alleged violations of § 1437p. They argue that § 1437p grants them a privately enforceable federal right to prevent the demolition of their housing developments.

Section 1983 permits private individuals to sue state actors to enforce constitutional rights as well as rights created by federal statutes. See Johnson v. Housing Auth. of Jefferson Parish, 442 F.3d 356, 359 (5th Cir. 2006). However, federal statutes must unambiguously confer substantive rights upon a class of beneficiaries in order to be enforced through § 1983. Id. Whether such rights have been conferred depends on Congressional intent, as indicated by the text and structure of the statute. See Gonzaga Univ. v. Doe, 536 U.S. 273, 285-86 (2002). The statutory language must create an individual entitlement, with the clear emphasis on the benefitted class rather than on the person or entity

regulated. Id. at 287. We employ a three-part test articulated by the Supreme Court to determine whether Congress intended to create a privately enforceable right: "(1) Congress must have intended that the provision in question benefit the private plaintiff; (2) the right assertedly protected by the statute must not be so 'vague and amorphous' that its enforcement would strain judicial competence; and (3) the statute must unambiguously impose a binding obligation on the states, with the asserted right couched in mandatory rather than precatory terms." Johnson, 442 F.3d at 360 (citing Blessing v. Freestone, 520 U.S. 329, 340-41 (1997)).

The Supreme Court has emphasized the narrowness of this doctrine, rejecting the notion that "anything short of an unambiguously conferred right" will support a cause of action under § 1983. Gonzaga, 536 U.S. at 283. As we have previously observed, the Court has taken an increasingly restrictive view of whether statutes create federal rights such that "very few statutes are held to confer rights enforceable under § 1983." Johnson, 442 F.3d at 360.

To determine whether § 1437p fits within this narrow doctrine, some background information about this statute is necessary. The U. S. Housing Act of 1937 is a federal grant-in-aid program. See Edwards v. Dist. of Columbia, 821 F.2d 651, 652 (D.C. Cir. 1987). To receive federal funds, local public housing agencies are required to comply with various conditions. Id. Section 1437p governs the demolition and disposition of public housing facilities. It lists criteria for when the Secretary of HUD shall approve or disapprove an application for demolition from a local public housing authority. For example, the Secretary shall approve an application for demolition if the local agency certifies, among other things, that "the project or portion of the public housing project is obsolete as to physical condition, location, or other factors, making it unsuitable for housing purposes." 42 U.S.C. § 1437p(a)(1)(A)(i). The local agency must also certify that it will notify the residents ninety days prior to the displacement date

and that each displaced family will be offered comparable housing. Id. at § 1437p(4)(A)(iii).

This provision has been interpreted and amended several times since it was enacted in 1983. In 1987, the D.C. Circuit concluded in Edwards v. District of Columbia that "neither the language nor the legislative history of § 1437p creates rights in public housing tenants against the constructive demolition of their units." 821 F.2d at 659-60. The plaintiffs in Edwards brought a constructive demolition claim, meaning that they were attempting to enforce compliance with § 1437p even though HUD had not yet approved the D.C. housing authority's demolition application and the residents had not yet been displaced. The plaintiffs argued that the D.C. housing authority had begun demolition before receiving approval from HUD and had therefore circumvented the requirements of § 1437p. Id. at 653. Following Edwards, Congress amended § 1437p to include a subsection that would be fully enforceable by public housing residents.[2] However, in 1998 Congress removed this subsection and amended the statute to its present form. There is no explanation in the legislative history as to why the subsection was repealed.

---

[2] See H.R. Conf. Rep. 100-426, 1987 U.S.C.C.A.N. 3458 at 3469 (stating that "[t]he conference agreement also contains a provision clarifying that no [local public housing authority] shall take any steps toward demolition and disposition without having satisfied the statutory criteria. This provision is intended to correct an erroneous interpretation of the existing statute by the United States Court of Appeals for the D.C. Circuit in Edwards v. District of Columbia and shall be fully enforceable by tenants of and applicants for the housing that is threatened.") The added provision read:

> (d) . . . A public housing agency shall not take any action to demolish or dispose of a public housing project or a portion of a public housing project without obtaining the approval of the Secretary and satisfying the conditions specified in subsections (a) and (b) of this section.

After the 1987 amendment, a series of district court cases found that § 1437p created enforceable rights.[3] Each of these cases interpreted the statute as it was amended after Edwards but before the 1998 amendment. Two Ohio district court cases, decided after the 1998 amendment, found that § 1437p created enforceable rights. However, these cases relied on the prior cases interpreting the pre-1998 statute. The Ohio district courts did not conduct any inquiry into how the repeal of the provision designed to create privately enforceable rights altered the analysis under Blessing and Gonzaga. See English Woods Civic Ass'n v. Cincinnati Metro. Housing Auth., 2004 WL 3019505 (S.D. Ohio 2004); Givens v. Butler Metro. Housing Auth., 2006 WL 3759702 (S.D. Ohio 2006). Recently, a California district court has taken up the question and concluded that § 1437p(a)(4) creates rights enforceable through § 1983. See Arroyo Vista Tenants Ass'n v. City of Dublin, 2008 WL 2186438 (N.D. Cal. 2008). No Circuit since the D.C. Circuit in Edwards has weighed in on this issue.

Under the three-part test articulated in Blessing, we must first consider whether § 1437p indicates that Congress has unambiguously conferred a right on individuals. We have observed that "when a provision in a statute fails to impose a direct obligation on the States, instead placing the onus of compliance . . . on the federal government, no cause of action cognizable under section 1983 can flourish." Resident Council of Allen Parkway Vill. v. U. S. Dep't of Hous. & Urban Dev., 980 F.2d 1043, 1052 (5th Cir. 1993)(quoting Stowell v. Ives, 976 F.2d 65, 70 (1st Cir. 1992)). Here, § 1437p is explicitly directed to the Secretary of HUD. The entire provision is framed in terms of when the Secretary should

---

[3] See Concerned Tenants Ass'n of Father Panik Vill. v. Pierce, 685 F. Supp. 316, 321 (D. Conn. 1988); Tinsley v. Kemp, 750 F. Supp. 1001, 1008-09 (W.D. Mo. 1990); Henry Horner Mothers Guild v. Chicago Housing Auth., 780 F. Supp. 511, 513-15 (N.D. Ill. 1991); Gomez v. Housing Auth. of the City of El Paso, 805 F. Supp. 1363, 1374-75 (W.D. Texas 1992); Velez v. Cisneros, 850 F. Supp. 1257, 1269-71 (E.D. Pa. 1994).

approve or disapprove a demolition application. By directing the statutory command to the Secretary of HUD, Congress placed the onus of compliance on the federal government. Though the statute indirectly notifies local housing authorities as to what they must show in their demolition application for it to be approved, it is HUD that receives the direct command, and HUD ultimately controls compliance with the statute by either approving or disapproving the applications.

Although the five sub-provisions of § 1437p(a)(4) contain language referencing the individual residents, the overall structure of the statute shows that these sub-provisions are intended as an administrative checklist of what the Secretary must look for in a local housing authority's application in order to approve the demolition plan. Like the rest of the statute, this provision is introduced with the statement that "[T]he Secretary shall approve the application, if the public housing agency certifies—[.]" Then subsection 4 lists what the local housing authority must show that it will do, including notify residents, pay relocation expenses, provide comparable housing, and offer counseling. As the Supreme Court has held, "[s]tatutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons." Alexander v. Sandoval, 532 U.S. 275, 289 (2001) (internal quotation omitted). Here, the statute focuses on the person regulated—the Secretary of HUD—not the residents of the housing developments. The purpose of the language referencing the residents is to provide a clear directive to the Secretary, not to confer substantive rights upon individuals. As indicated by the statute's focus on what the Secretary must do, the "remedy" if a local housing authority fails to show that it meets the requirements of § 1437p(a)(4) is that the Secretary must disapprove the demolition application. There is no indication in the statute that Congress

intended public housing residents to have legal recourse against local housing authorities to enforce these administrative checklist requirements.

Although there is no stated intent in the legislative history regarding whether an enforceable federal right exists in the current version of § 1437p, Congressional action confirms our view that the statute creates no such rights. Congress clearly intended in 1987, in response to Edwards, to add a provision that would be privately enforceable. This provision required that local housing authorities "shall not" begin demolition without receiving approval from HUD and satisfying the conditions listed in § 1437(a) and (b). However, Congress repealed this provision in its entirety in 1998. The logical inference from this action is that Congress intended to remove the private right of action that the provision created. Under Gonzaga, we must find that Congress manifests an unambiguous intent to confer a federal right in a particular statute in order for it to be enforceable through § 1983. 536 U.S. at 283. The repeal of the provision added in 1987, combined with the text and structure of the current statute, makes it at least ambiguous as to whether Congress intended for the current version of § 1437p to create a federal right. Accordingly, we hold that § 1437p does not unambiguously confer individual rights enforceable through § 1983.

Since we conclude that the first prong of the Blessing test has not been met, we need not reach the second and third prongs.

B

The Residents also claim that the district court erred in dismissing their § 1437p claim against HUD. They argue that § 702 of the APA allows them to sue HUD for failing to comply with the requirements of § 1437p.

Section 702 of the APA waives federal agencies' sovereign immunity in suits for relief other than money damages, providing that:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action

in a court of the United States seeking relief other than money damages . . . shall not be dismissed nor relief therein be denied on the ground that it is against the United States.

5 U.S.C. § 702.  Since HUD approved HANO's demolition application, this section would allow the Residents to sue HUD for non-monetary damages stemming from any legal wrongs suffered in the demolition application approval process.  It appears, however, that the district court dismissed the Residents' § 1437p claim against HUD for the same reasons it dismissed the claim against HANO—lack of a privately enforceable federal right.  Since the Residents have stated a claim under § 1437p, enforceable against HUD through § 702 of the APA, the district court's determination that no enforceable federal right existed against HUD was in error.

However, this error is of no consequence because the dismissal was nonetheless proper.  Claims may only be brought under § 702 for "relief other than money damages."  The Supreme Court has held that whether a type of relief is considered "money damages" under § 702 is not necessarily determined by the fact that the remedy requires one party to pay money to another.  See Bowen v. Massachusetts, 487 U.S. 879, 893 (1988).  Suits seeking money may go forward under § 702 where the statute in question specifically mandates the payment of money.  See id. at 900-01 (allowing suit under § 702 to recover money for medical services because the Medicaid Act provides that the Secretary "shall pay" certain amounts for appropriate Medicaid services).  In other words, a monetary remedy is properly considered specific relief when it gives the plaintiff "the very thing to which he was entitled" under the relevant statute, as opposed to compensatory relief which is designed to substitute for an injury to the plaintiff's person, property, or reputation.  Id. at 895.

Here, the Residents have consistently characterized their injury as the destruction of their housing developments.  Their complaint seeks relief in the

11

form of an injunction to stop the demolition and monetary compensation for injuries associated with the demolition. The "very thing to which [they claim to be] entitled" is the occupation of their housing units in the Big Four. Since the demolition is now substantially complete, and as explained in Part III.C below, injunctive relief is no longer availing. Monetary compensation for alleged injuries appears to be the only remaining form of relief. However, monetary compensation for injuries to person or property in this case is a substitute form of relief, rather than specific relief, and may not be sought under § 702. Id. The Residents have not argued that § 1437p entitles them to the payment of funds in the form of specific relief. Therefore, we hold that the district court's dismissal of the § 1437p claim against HUD was proper to the extent that the Residents seek money damages.

C

The Residents also appeal the district court's denial of their motion for a preliminary injunction to halt demolition. They argue that the district court abused its discretion on substantive and procedural grounds, in its application of the four-factor test to the facts of this case and in its failure to hold an evidentiary hearing.

Injunctive relief is "an extraordinary and drastic remedy," and should only be granted when the movant has clearly carried the burden of persuasion. See Holland Am. Ins. Co. v. Succession of Roy, 777 F.2d 992, 997 (5th Cir. 1985). Specifically, the movant must show:

> (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest.

Canal Auth. v. Callaway, 489 F.2d 567, 572 (5th Cir. 1974).

We find no abuse of discretion in the district court's conclusion that the Residents did not carry their burden of showing that these factors were met. As indicated by our holdings in Parts III.A and B above the district court correctly dismissed the § 1437p claims, rendering it impossible for the Residents to make a substantial showing of likelihood of success on those claims. Further, the record indicates that it was reasonable for the district court to conclude that there were no illegalities in the demolition application approval process. HANO's demolition application indicates that each of the requirements of § 1437p were met. Numerous reports showed that the buildings were obsolete, dilapidated, and unsuitable for housing purposes. The residents were offered opportunities for consultation and provided with information several times throughout the process. HANO notified each affected resident by mail of a meeting on the proposed demolition, and many residents attended this meeting. HANO also held a meeting with resident leaders to discuss the demolition process. Further outreach meetings were conducted for affected residents living outside of New Orleans, which over 500 people attended. Each displaced resident has been offered comparable housing in New Orleans. Though the Residents argue that the rapid approval of HANO's application indicates some impropriety, the record shows that HUD's review occurred over several weeks and was only expedited in order to make a ruling on the application in time for HANO to meet funding deadlines.

Procedurally, the issuance of a preliminary injunction requires notice to the adverse party. FED. R. CIV. P. 65(a)(1); PCI Transp., Inc. v. Fort Worth & W. R.R. Co., 418 F.3d 535, 546 (5th Cir. 2005). This Court has interpreted Rule 65(a)(1) to require that where factual disputes are presented, the parties must have "a fair opportunity and a meaningful hearing to present their differing versions of those facts before a preliminary injunction may be granted." Kaepa, Inc. v. Achilles Corp., 76 F.3d 624, 628 (5th Cir. 1996) (citation omitted). If the

party requesting the injunction cannot show that factual disputes exist regarding the required elements, and cannot introduce evidence sufficient to justify granting the motion, a hearing on the requested injunctive relief is unnecessary. See PCI Transp., 418 F.3d at 546.

The district court did not abuse its discretion in denying the preliminary injunction without holding an evidentiary hearing. The district court did not rely on any disputed facts in determining whether the injunction should issue. Moreover, the district court allowed extensive briefing on the preliminary injunction issue and held a telephone conference where each side presented its claims. The requirements of Rule 65(a)(1) were thus met.

Overall, we find no extraordinary circumstances here to justify overturning the denial of the preliminary injunction. Accordingly, the district court did not abuse its discretion in denying the preliminary injunction.

IV

For the foregoing reasons, we AFFIRM the district court's dismissal of the § 1437p claims against HANO and also AFFIRM the dismissal of the § 1437p claims against HUD. We further AFFIRM the district court's denial of a preliminary injunction.