# United States Court of Appeals
## <u>For the First Circuit</u>

No. 09-1200

ARCADIO APONTE-ROSARIO, as Resident of Las Gladiolas Public
Housing Project; MIRTA COLÓN-PELLICIER, as Resident of
Las Gladiolas Public Housing Project; IRIS MARGARITA APONTE-
MARRERO, as Resident of Las Gladiolas Public Housing Project,

Plaintiffs, Appellants,

ROSSANA DE LEÓN-RIVERA, as Resident of Las Gladiolas Public
Housing Project; LUZ ELENA RAMOS-AYALA, as Resident of
Las Gladiolas Public Housing Project,

Plaintiffs,

v.

ANÍBAL ACEVEDO-VILÁ, Governor of The Commonwealth of
Puerto Rico; JORGE RIVERA, Secretary of the Department of
Housing of the Commonwealth of Puerto Rico; CARLOS LABOY,
Director of the Puerto Rico Public Housing Administration,

Defendants, Appellees,

ALPHONSO JACKSON, Secretary of the United States Department of
Housing and Urban Development; MICHAEL COLÓN, Director,
Field Office; OLGA SÁEZ, Housing Director of the Office for
the Puerto Rico/Virgin Islands of the United States Department
of Housing and Urban Development; AMERICAN MANAGEMENT, INC.,

Defendants.

---

No. 09-1362

ARCADIO APONTE-ROSARIO, as Resident of Las Gladiolas Public
Housing Project; MIRTA COLÓN-PELLICIER, as Resident of
Las Gladiolas Public Housing Project; IRIS MARGARITA APONTE-
MARRERO, as Resident of Las Gladiolas Public Housing Project,

Plaintiffs, Appellants,

ROSSANA DE LEÓN-RIVERA, as Resident of Las Gladiolas Public
Housing Project; LUZ ELENA RAMOS-AYALA, as Resident of

Las Gladiolas Public Housing Project,

Plaintiffs,

v.

ALPHONSO JACKSON, Secretary of the United States Department of Housing and Urban Development; MICHAEL COLÓN, Director, Field Office; OLGA SÁEZ, Housing Director of the Office for the Puerto Rico/Virgin Islands of the United States Department of Housing and Urban Development,

Defendants, Appellees,

ANÍBAL ACEVEDO-VILÁ, Governor of The Commonwealth of Puerto Rico; JORGE RIVERA, Secretary of the Department of Housing of the Commonwealth of Puerto Rico; CARLOS LABOY, Director of the Puerto Rico Public Housing Administration.

Defendants.

_____

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

_____

Before

Torruella, Selya, and Lipez,
Circuit Judges.

_____

Myrta Morales-Cruz, for appellants.
Susana I. Peñagarícano-Brown, Assistant Solicitor General, with whom Irene S. Soroeta-Kodesh, Solicitor General, Leticia Casalduc-Rabell, Deputy Solicitor General, and Zaira Z. Girón-Anadón, Deputy Solicitor General, were on brief for appellees Acevedo-Vilá, Rivera, Laboy and American Management, Inc.
Patricia Sharing Flagg, Special Assistant United States Attorney, U.S. Department of Housing and Urban Development, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, were on brief for appellees Jackson, Colón, and Sáez.

July 28, 2010

**TORRUELLA**, <u>Circuit Judge</u>. Plaintiff-Apellants, several residents of Las Gladiolas I and II public housing project (Las Gladiolas), appeal the district court's grant of summary judgment in favor of several officers of the Commonwealth of Puerto Rico and the Puerto Rico Public Housing Administration (PRPHA) and the dismissal of their claims against the Department of Housing and Urban Development (HUD).[1] Appellants claim that in preparing and approving an application for demolition of Las Gladiolas the PRPHA and HUD violated their statutory right to resident consultation under section 1437p of the United States Housing Act of 1937, 42 U.S.C. § 1437p(a),[2] and their constitutional right to procedural due process under the Fifth and Fourteenth Amendments of the United States Constitution. Finally, Appellants claim that there is a genuine issue of material fact as to whether the Commonwealth

---

[1]    Plaintiff-Appellants, Arcadio Aponte-Rosario, Mirta Colón-Pellecier, and Iris Margarita Aponte-Marrero, (collectively, Appellants), filed the present case as a class action suit. Class certification was never granted as the district court dismissed all of Appellants' claims.

[2]    42 U.S.C. § 1437p(b)(2) provides:
"The Secretary shall disapprove an application [for demolition or disposition] . . . if the Secretary determines that (1) any certification made by the public housing agency under that subsection is clearly inconsistent with information and data available to the Secretary or information or data requested by the Secretary; or (2) <u>the application was not developed in consultation with</u>-- (A) residents who will be affected by the proposed demolition or disposition; (B) each resident advisory board and resident council . . . that will be affected by the proposed demolition or disposition; . . . ." (emphasis added).

-4-

abandoned upkeep of Las Gladiolas in an effort to justify the demolition of some of the buildings. After careful consideration, we affirm the district court's dismissal of Appellants' claims.

## I. Facts and Procedural Background

The Las Gladiolas project has two high-rise buildings that house 676 apartment units. On April 28, 2005, the PRPHA submitted its application to HUD for demolition of Las Gladiolas stating that structural tests revealed that the buildings were no longer suited for public housing purposes and that no reasonable and cost-effective plan for repairs or "modernization" was feasible.[3]

Prior to submitting its application for demolition, the PRPHA held five public hearings to discuss its Annual Plans. Each Annual Plan included demolition of Las Gladiolas as one of the agency's objectives, and demolition of Las Gladiolas was discussed in each of the five annual hearings. The hearings were held on April 2, 2001, March 27, 2002, March 28, 2003, March 25, 2004, and March 30, 2005. The hearings were announced in local newspapers. The published notices included the dates and locations of the

---

[3] The primary statutory criteria for demolition of a public housing project are: (i) that the project is obsolete as to physical condition, location, or other factors, making it unsuitable for housing purposes; and (ii) no reasonable program of modifications is cost-effective to return the public housing project or portion of the project to useful life. 42 U.S.C. § 1437 p(a)(1)(A). Appellants have not challenged the PRPHA's certification that Las Gladiolas met the criteria for demolition.

hearings; provided directions to a location where residents could view the plans; and informed residents that transportation to the hearings would be provided. Many Las Gladiolas residents attended these public hearings and voiced their concerns.[4]

On February 22, 2005, the PRPHA held a two hour and forty-five minute meeting with Las Gladiolas I & II's residents' council and Las Gladiolas residents to discuss, among other matters, the proposed demolition. After this meeting, the PRPHA formally filed its application for demolition of the housing project with HUD. HUD approved the PRPHA's application for demolition on February 2, 2006.

Following HUD's approval of the application for demolition, Appellants filed a class action suit on behalf of all residents of Las Gladiolas seeking to stop or delay the demolition of Las Gladiolas. The complaint sought declaratory and injunctive relief against the Governor of the Commonwealth of Puerto Rico; the Secretary of the Department of Housing of Puerto Rico; and the Director of the PRPHA in their official capacities (collectively, Commonwealth defendants); and against three HUD officers in their official capacities, namely, the Secretary of HUD; HUD's Field Office Director for Puerto Rico and the Virgin Islands; and HUD's Director of Public Housing for Puerto Rico and the Virgin Islands.

---

[4] During a March 11, 2002 meeting with residents, the PRPHA's plans for demolition were discussed. The minutes of this last meeting, however, were not submitted to the district court.

The complaint alleged that Plaintiffs had been deprived of their due process right to consultation and of their statutory right to consultation as recognized in 42 U.S.C. § 1437p. Appellants also brought a claim under 42 U.S.C. § 1437p and 24 C.F.R. § 970.12, asserting that through inaction and neglect, the Commonwealth defendants had kept two of the four buildings at Las Gladiolas in a state of disrepair that amounted to the de facto or constructive demolition of those buildings. As to HUD, the complaint claimed that the agency's approval of the PRPHA's application for demolition was illegal because the application was not developed in consultation with residents as required by section 1437p.[5]

In due course, the Commonwealth defendants moved for summary judgment. The HUD defendants filed a Motion In Support of [the] Commonwealth Defendants' Motion for Summary Judgment arguing that if the Commonwealth was found to have complied with the statutory requirements for resident consultation, HUD's approval of the application for demolition would also be in compliance with the regulations and therefore summary judgment should be granted in HUD's favor.

In December 2008, the district court granted summary judgment in the Commonwealth defendants' favor, finding that the

_____

[5] In November 2005, Aponte filed an administrative complaint before HUD challenging the alleged unlawful actions taken by the Commonwealth defendants and requesting HUD's intervention. At the time the briefs were filed in this case, HUD had not officially responded to Aponte's administrative complaint.

PRPHA had complied with the resident consultation requirement as prescribed in section 1437p and that Appellants had failed to show that there were genuine issues of material fact as to whether the Commonwealth defendants had failed to maintain Las Gladiolas. Approximately one month later, the district court dismissed Appellants' claims against HUD, finding that HUD "did not act unlawfully in approving the demolition." Aponte-Rosario v. Acevedo-Vilá, No. 06-1578, slip op. at 3 (D.P.R. Jan. 29, 2009). Appellants filed this timely appeal challenging the district court's dismissal of their claims.

## II. Preliminary Issues and Standard of Review

**A. Appellants' Right of Action Under 42 U.S.C. § 1983 and 5 U.S.C. § 702**

Appellants' main claim on appeal is that they were deprived of their right to consultation as recognized in section 1437p of the United States Housing Act. Appellants asserted jurisdiction for the resident consultation claim against the Commonwealth defendants under 42 U.S.C. § 1983 and against HUD under section 702 of the Administrative Procedure Act, 5 U.S.C. § 702.

The district court did not consider whether section 1437p provides Appellants a right enforceable under section 1983 and the parties did not raise the question on appeal.[6] While we harbor

---

[6] The issue, however, was raised by this court at oral argument and the parties filed supplemental letters under Rule 28j discussing whether a private right of action exists.

doubts as to whether section 1473p confers upon Appellants a private right of action, and at least one circuit has held that residents of a public housing complex do not have such an unambiguous and "privately enforceable federal right to prevent the demolition of their housing developments," Anderson v. Jackson, 556 F.3d 351, 356, 358 (5th Cir. 2009), we decline to address the issue here. We thus assume, without deciding, that Appellants may pursue a cause of action under section 1437p.

The question whether determination of the existence of a private cause of action is a jurisdictional inquiry or instead one that goes to the merits of the claim is a thorny one. Although we are obliged to decide as a threshold matter certain jurisdictional questions that implicate our authority to hear a dispute under Article III, see Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94, 101-02 (1998), we are not so constrained where, as here, issues of statutory jurisdiction are in play, Restoration Pres. Masonry, Inc. v. Grove Eur. Ltd., 325 F.3d 54, 59-60 (1st Cir. 2003); see also Davignon v. Clemmey, 322 F.3d 1, 11 (1st Cir. 2003) (appellate court remains free to bypass problematic jurisdictional issues provided those issues do not implicate Article III requirements); Kelly v. Marcantonio, 187 F.3d 192, 197 (1st Cir. 1999) (same).

We also assume, without deciding, that Appellants have a valid claim under section 702 of the Administrative Procedure Act

(APA) against HUD and proceed accordingly.[7]   See Air Courier

Conference of Am. v. Am. Postal Workers Union, 498 U.S. 517, 523

n.3 (1991) ("Whether a cause of action exists [under the APA] is

not a question of jurisdiction, and may be assumed without being

decided." (citing Burks v. Lasker, 441 U.S. 471, 476 n.5 (1979));

see also R.I. Dep't. of Envtl. Mgmt. v. United States, 304 F.3d 31,

40 (1st Cir. 2002) ("[W]hether the APA provides for judicial review

of [a] nonfinal ruling is not [a question] that, precisely

speaking, implicates the subject-matter jurisdiction of the

court.").

## B. Standard of Review

We review de novo the district court's grant of summary

judgment, "taking the facts and all reasonable inferences therefrom

in the light most favorable to [Appellants]."   Hoyos v. Telecorp

Commc'ns, Inc., 488 F.3d 1, 5 (1st Cir. 2007).   Summary judgment is

appropriate if there are no genuine issues as to any material fact

and the moving party is entitled to judgment as a matter of law.

---

[7]   In an order issued on February 7, 2007, the district court denied HUD's Federal Rule of Civil Procedure Rule 12(b) motion to dismiss Appellants' claims for failure to state a cause of action against HUD.   In its motion, HUD argued that the decision to approve the PRPHA's application for demolition was committed to the Secretary's discretion and was thus unreviewable pursuant to section 701(a)(2) of the APA.   The district court, however, never considered whether Appellants had a valid claim under APA section 702, which provides a cause of action for any "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute. . . ."   5 U.S.C. § 702.

Fed. R. Civ. P. 56(c); see, e.g., Collazo v. Nicholson, 535 F.3d 41, 44 (1st Cir. 2008).

## III. Discussion

### A. Resident Consultation Claim Against the Commonwealth Defendants

Appellants challenge the adequacy and sufficiency of the procedures employed by the PRPHA to consult with residents. They contend that neither the annual hearings held by the PRPHA nor the February 25, 2005 meeting with Las Gladiolas residents satisfied the statutory requirement of consultation. Appellants argue that the notices that announced both the annual hearings and the February 25th meeting were inadequate because they did not specify that demolition of Las Gladiolas was to be discussed. They also claim that residents were not afforded a meaningful opportunity to be heard because the annual meetings covered a panoply of issues apart from demolition, and the final meeting with residents was held just a few months prior to the filing of the application for demolition and other topics like relocation were discussed.

Section 1437p governs demolition of a public housing project and provides that the Secretary of HUD shall not approve an application for demolition unless certain conditions are met. 42 U.S.C. § 1437p. Section 1437p(b) provides that

> [t]he Secretary shall disapprove an application [for demolition] if the Secretary determines that . . . (2) the application was not _developed in consultation with (A) residents who will be affected by the proposed demolition or disposition_; (B) _each resident_

-11-

> advisory board and resident council, if any,
> of the project (or portion thereof) that will
> be affected by the proposed demolition or
> disposition; and (C) appropriate government
> officials.

(emphasis added).[8] The statute does not define "consultation," and it does not provide specific requirements as to what type of notice must be given, how many times consultation must occur, how many residents must be present when demolition is discussed, or what opportunities residents must be provided to voice their opinions as to demolition before the local housing authority may be deemed to have satisfied the general consultation requirement.

Following the general guidelines set forth by section 1437p, the PRPHA held five public hearings from 2001 to 2005 to discuss the PRPHA's Annual Plans. The Annual Plans of those five years indicated that there was a planned application for demolition of Las Gladiolas and included a time line for the anticipated start and end dates for demolition. Las Gladiolas residents were present at these annual hearings[9] and voiced their concerns regarding the

---

[8] The regulation that was in effect when the PRPHA submitted its application for demolition provided that the public housing authority's application for demolition should include "[a] description of the PHA's consultations with tenants and any tenant organizations . . . with copies of any written comments which may have been submitted to the PHA and the PHA's evaluation of the comments." 24 C.F.R. § 970.8 (2005).

[9] Approximately eighty Las Gladiolas residents attended the April 2001 hearing; twenty-nine residents attended the March 2002 hearing; thirty-one residents attended the March 2003 hearing; one resident attended the March 2004 hearing; and six residents attended the March 2005 hearing.

PRPHA's plan for demolition. For example, Aponte voiced his opposition to the demolition on at least three of the hearings.[10]

Besides holding annual hearings in each of the five years prior to the filing of the PRPHA's application for demolition, PRPHA officials met with members of Las Gladiolas residents' council on October 18, 2001. Among other issues, they discussed an implosion update for Las Gladiolas. An additional and final meeting specifically for Las Gladiolas residents was held on February 22, 2005 to discuss "important matters for the benefit of the community." The attendance sheet shows that approximately 170 Las Gladiolas residents attended this meeting to discuss relocation concerns, the possibility of the building's rehabilitation, and issues regarding demolition. Although the meeting's minutes show that relocation was the residents' principal concern, they also reveal that residents, including Aponte, were able to express their concerns as to why the PRPHA had opted for demolition.[11]

We note that the PRPHA's efforts to consult with residents were by no means ideal or extensive. For example, the published notices for both the annual hearings and the February

---

[10] Aponte testified at the April 2, 2001, March 27, 2002, and March 28, 2003 hearings and stated his opposition to the proposed demolition. He also acknowledged that some residents favored demolition.

[11] The minutes show that Aponte questioned the agency's explanation that rehabilitation or remodeling was not feasible due to budgetary constraints.

-13-

22nd meeting did not indicate that demolition of Las Gladiolas was to be discussed, and there is no indication in the record that the PRPHA informed residents in any other manner that demolition would be discussed in the annual hearings. Cf. Anderson, 556 F.3d at 360 (finding no abuse of discretion in district court's denial of preliminary injunction where the record showed that the local housing authority notified residents by mail of a meeting on the proposed demolition which residents attended and where an additional meeting was held with resident leaders to discuss demolition); Project B.A.S.I.C. v. Kemp, 721 F. Supp. 1501, 1511 (D.R.I. 1989) (noting that consultation was met where the local housing authority informed members of the tenant association of the plan for demolition; established a modernization committee with tenants; and allowed tenants to comment on the proposed demolition during public meetings held by the Board of Commissioners). Furthermore, the annual hearings were not the ideal forum in which demolitions should be addressed as the hearings were held to discuss a broad range of public housing issues.

Despite the limitations of the consultation performed by the PRPHA, the record shows that the PRPHA took affirmative actions to inform residents about the plans for demolition, and residents were afforded the opportunity, throughout the course of five years, to voice their concerns and provide comments regarding demolition. Moreover, the procedures employed by the PRPHA were effective as

-14-

the residents, including Aponte, attended these meetings and were put on notice of the PRPHA's plan for demolition. Residents not only provided comments to the PRPHA in the annual hearings and the February 22nd meeting, but they also requested and were granted a meeting with the Secretary of the Commonwealth's Department of Housing to discuss demolition,[12] and were able to voice their concerns regarding demolition in other forums such as a committee of the Puerto Rico legislature.[13]

Although the process employed by the PRPHA was far from exemplary, the record clearly supports the conclusion that, throughout the course of five years, the PRPHA obtained comments from several residents and met with residents and the appointed residents' council on several occasions. We find that this is sufficient to satisfy the consultation requirement set forth in section 1437p(b).[14]

---

[12] In his testimony at the 2002 annual hearing, Aponte explained that a group of residents requested and was granted a meeting with the Secretary of the Department of Housing of the Commonwealth of Puerto Rico, Ileana Echegoyen, to discuss demolition.

[13] The record shows that residents voiced their opposition to demolition before a legislative committee and they also enlisted the help of the School of Social Work of the University of Puerto Rico in submitting alternative proposals to the PRPHA. The PRPHA also established a support center that provided information and counseling on demolition and relocation. However, the record does not reveal whether the center was established prior to the filing of the PRPHA's application for demolition.

[14] Appellants argue there is a genuine issue of material fact as to whether the PRPHA consulted with the resident organization Las Gladiolas Vive. Appellants, however, have not offered any evidence

**B. Due Process Claim**

Appellants also claim that their rights to constitutional procedural due process were infringed. Appellants due process argument is inextricably bound to their contention that the PRPHA did not develop its application in consultation with Las Gladiolas residents. They concede that the statutory consultation requirement complies with the minimum due process guarantees, but contend that these procedural guarantees were not afforded in this case.

The threshold question in any claim for denial of procedural due process is whether plaintiffs were deprived of a liberty or property interest protected by the United States Constitution. Lowe v. Scott, 959 F.2d 323, 334 (1st Cir. 1992). If a protected interest is found, we must then determine what process was due. Goss v. López, 419 U.S. 565, 577 (1975). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481 (1972). Despite this flexibility, it is well-settled that the

---

showing that Las Gladiolas Vive is a resident advisory board or residents' council that should be consulted under section 1437p(b)(2). Instead, they claim they are not required to offer proof at this stage in the proceedings regarding the organization's existence. Appellants' conclusory and unsupported assertion is insufficient to overcome the Commonwealth defendants' motion for summary judgment. Martínez-Rodríguez v. Guevara, 597 F.3d 414, 419 (1st Cir. 2010). Moreover, the record shows that the PRPHA met with the established residents' council of Las Gladiolas I and II prior to submitting the application for demolition.

essential requirements of procedural due process include adequate notice and an opportunity to be heard "at a meaningful time and in a meaningful manner."  Amsden v. Moran, 904 F.2d 748, 753 (1st Cir. 1990)(citation and internal quotation marks omitted); see also Jordan Hosp., Inc. v. Shalala, 276 F.3d 72, 78 (1st Cir. 2002).  In evaluating the adequacy of the procedures employed we "balanc[e] a number of factors, including the nature of the private and public interests involved; the risk of erroneous deprivation accruing under the procedures used by the state; and the probable benefit of demanding additional procedural safeguards."  Amsden, 904 F.2d at 753; see also Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

Appellants rely on persuasive authority to show that they have a protected property interest that would trigger procedural due process protections.  See Geneva Towers Tenants Org. v. Federated Mortg. Investors, 504 F.2d 483, 488-92 (9th Cir. 1974) (holding that tenants of federally subsidized housing project had a protected interest in continued receipt of low cost housing).  Assuming that Appellants have a protected property interest in the form of an expectation to remain in their public housing units, we do not believe that the process residents were afforded ran afoul of this constitutional guarantee.

Appellants' interest in participating in the decision process regarding demolition of their public housing units is significant.  Undoubtedly, the residents' input is an important

-17-

component in the development of an application for demolition and their comments assist the local housing authority in, for example, considering alternatives to demolition and assessing the impact demolition will have on residents.  But the government also has a significant interest in preserving flexibility when evaluating whether demolition of a public housing building is appropriate.  These competing interests are adequately balanced and honored through a process in which residents are notified of the proposal for demolition and given a meaningful opportunity to provide comments that the housing authority can consider.

"[P]rocedural due process is simply a guarantee of fair procedure," Amsden, 904 F.2d at 753 (citation and internal quotations omitted), and in this case Appellants were put on notice of the PRPHA's decision to demolish; were afforded the opportunity to participate in a series of hearings and meetings where PRPHA officials discussed the plans for demolition; and were given the opportunity to comment on the proposed demolition before the PRPHA filed its application for demolition.  More importantly, consultation was done over the course of five years, a reasonable time span that gave residents a meaningful opportunity to be heard. Viewing the competing interests involved in a public housing authority's decision to request authorization to demolish a public housing building, we cannot say that Appellants were deprived of the minimum procedural constitutional guarantees to which they were

entitled.  Appellants were afforded a fair procedure that also met the general statutory requirement of consultation.

As there are no genuine issues of material fact regarding the PRPHA's compliance with resident consultation prior to filing an application for demolition with HUD, we affirm the district court's decision dismissing Appellants' claims against the Commonwealth defendants.

## C. APA Claim Against HUD

Appellants claim that HUD violated section 1437p(b) in approving the PRPHA's application for demolition.  They contend that the PRPHA developed its application for demolition without meeting the resident consultation requirement, and that therefore HUD's approval of the application was unlawful.  They also allege that the evidence included in the administrative record is insufficient to establish that the PRPHA complied with the consultation requirement. They argue that the only documents appended to the application for demolition included the minutes of the February 22, 2005 meeting and a newspaper announcement for the 2004 public hearing.

Our review of HUD's decision to approve the application for demolition is governed by the highly deferential standard of review set forth in section 706(2)(A) of the APA.  5 U.S.C. § 706(2)(A).  We may only disturb HUD's decision if the administrative record as a whole reveals the decision was "arbitrary, capricious, an abuse of discretion, or not in accordance

with law." Id. We presume HUD's decision is valid and may only disturb it if there is no rational basis to support it. See River Street Donuts, LLC v. Napolitano, 558 F.3d 111, 114 (1st Cir. 2009); Conservation Law Found. of New England v. Sec'y of the Interior, 864 F.2d 954, 957 (1st Cir. 1989).

Given our conclusion that the PRPHA's efforts to consult with residents met the minimum procedural requirements of section 1437p(b), we cannot hold that HUD's approval of the application was arbitrary or capricious or otherwise not in accordance with the law. We acknowledge that the PRPHA's application provided scant documentation on consultation to support the agency's application for demolition. We cannot conclude, however, that in relying on the documents that were included in the administrative record -- which include documents showing that PRPHA officers met with Las Gladiolas residents and with the certified residents' council, meeting notices, sign-in sheets, and the minutes of the February 25th meeting -- HUD acted in an arbitrary or capricious manner.

We have reviewed the administrative record and are convinced it shows that the PRPHA engaged in efforts to inform residents of the proposed demolition and that the PRPHA procured and received comments from residents and the appropriate residents' council. We affirm the district court's dismissal of Appellants' claim as to HUD.

## D. _De facto_ Demolition Claim

Appellants' final claim on appeal is that the district court erred in dismissing their claim that since the year 2001, the PRPHA failed to properly maintain Las Gladiolas in an effort to force demolition of the project in violation of 42 U.S.C. § 1437(p) and its accompanying regulations.[15]

The only evidence that Appellants offer to support their claim that the PRPHA intentionally rendered Las Gladiolas uninhabitable by failing to maintain the buildings in safe, decent, and sanitary conditions, is a sworn statement given by Aponte on July 6, 2007 which generally addresses the buildings' condition at

---

[15] Appellants ground their constructive demolition claim on a series of cases that recognized a private right of action for constructive demolition under a repealed version of section 1437p(d), which required HUD approval before a public housing authority could "take any action to demolish or dispose of a public housing project." United States Housing Act of 1937, amended by Pub. Law No. 100-242, § 121(d), 101 Stat. 1815 (1988). Courts applying the former § 1437p(d) framework held that neglect of a development could establish a _de facto_ demolition claim. _See_, _e.g._, _Tinsley_ v. _Kemp_, 750 F. Supp. 1001 (W.D. Mo. 1990); _Concerned Tenants Ass'n of Father Panik Village_ v. _Pierce_, 685 F. Supp. 316, 321 (D.Conn. 1988). In 1998, the Quality Housing and Work Responsibility Act eliminated the requirement of prior HUD Secretary approval. Pub. Law No. 105-276, § 531(a), 112 Stat. 2461, 2570 (1998). However, the regulation that was in effect when the PRPHA filed its application for demolition, 24 C.F.R. § 970.12, 53 Fed. Reg. 30984 (1988) (repealed, October 24, 2006), stated that a Public Housing Authority (PHA) may not take any action to demolish a building without prior HUD approval. Similarly, the current regulation, 24 C.F.R. § 970.25 (effective November 24, 2006), requires a PHA to obtain HUD approval prior to taking any action to demolish a public housing unit. We need not decide whether a right of action for constructive demolition exists under the applicable regulations. As the district court did, we assume that such an enforceable right exists.

and around 2007, one year after the application for demolition had been submitted to HUD.[16] Some portions of the statement address the buildings' condition prior to 2006, stating that Las Gladiolas had been deteriorating since 2001 and that prior to 2001, the apartments were allegedly in compliance with regulations and received "satisfactory ratings on the annual inspections." However, the statement lacks specificity as to the extent of the deterioration, when it started, its causes, or whether the conditions existed at the time the PRPHA filed its application with HUD.

In order to survive a motion for summary judgment, the non-moving party "must . . . set out specific facts showing a

---

[16] Aponte declared under oath the following:

The living conditions in Las Gladiolas are very far from being sanitary and decent. Before 2001, when the process of relocation started, all the apartments received satisfactory ratings on the annual inspections. Since 2001 the condition of the 4 towers has deteriorated rapidly. The vacated apartments are filled with debris, dirty water, and old clothes left there by the previous tenants. Overall, most apartments have broken sinks and water filtrations [sic]. The complex is experimenting [sic] an infestation of plagues that include rats, cockroaches, mosquitoes and bees. There has been almost no efforts to fumigate, only one, but it was only a few apartments. The handrails are rotting, there is a deficient illumination of the premises (especially in common areas) and the storage rooms on every floor are filled with debris and dead animals. The parking area has no illumination and the grass around it is not trimmed as it should be. The sewers constantly overflow, the recreation areas for the children are completely abandoned and vandalized, and the basketball courts are semi-painted [sic]. . . . Out of the ten (10) elevators only two (2) are partially working. It is getting worse and worse with the passing of time. It was not like this before they decided to implode the complex.

-22-

genuine issue for trial." Fed. R. Civ. P. 56(e). "With respect to each issue on which the nonmoving party has the burden of proof at trial, that party must 'present definite, competent evidence to rebut the motion.'" Martínez-Rodríguez, 597 F.3d at 419 (citations omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted). The non-moving party "may not rest upon conclusory allegations, improbable inferences, and unsupported speculation." Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008) (internal quotation marks omitted).

Drawing all inferences in favor of Appellants, we can conclude that Aponte's statement details a series of conditions which show that proper maintenance was generally not provided at the time the statement was made. We can also conclude that after the PRPHA began to consider a plan for demolition in 2001, the buildings deteriorated. However, Aponte's statement does not specify which conditions existed prior to the PRPHA's application for demolition, nor does it state whether the PRPHA was made aware of the specific conditions, or whether the PRPHA purposefully declined to address the conditions Aponte detailed in his statement.[17]

_____

[17]  In his deposition testimony, the Director of the PRPHA, Mr. Carlos Laboy-Díaz, recognized that as of 2007, the PRPHA had received complaints from residents regarding problems with the buildings' elevators and water system and complaints regarding security issues in Las Gladiolas. Mr. Laboy explained that the

Even assuming, without deciding, that a claim for constructive demolition is available in these circumstances, Aponte's statement is insufficient to overcome summary judgment as it includes general allegations and lacks specificity regarding the conditions that existed in Las Gladiolas <u>prior to the filing of the PRPHA's application for demolition</u>. Though conditions in Las Gladiolas seemed to be far from ideal in 2007, Appellants have failed to show that the Commonwealth defendants' purposefully created and maintained these conditions in order to bring about a <u>de facto</u> demolition.

As Appellants have failed to produce evidence to show that Las Gladiolas was rendered uninhabitable due to the PRPHA's intentional acts or inaction, we cannot hold that the district court erred in dismissing this claim.[18]

---

PRPHA had expended funds to repair the elevators and to fix problems with the water system. He also explained that in 2005, security cameras were installed.

[18] Given that Appellants failed to shoulder the burden of showing that a triable issue exists as to their <u>de facto</u> demolition claim, we need not examine whether the district court abused its discretion in admitting and considering the maintenance expense reports of Las Gladiolas submitted by the Commonwealth defendants which do not appear to have been properly authenticated as required by Federal Rule of Civil Procedure 56(e). <u>See</u> <u>Carmona</u> v. <u>Toledo</u>, 215 F.3d 124, 131 (1st Cir. 2000) ("To be admissible at the summary judgment stage, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e)." (citations and internal quotation marks omitted)).

## IV. Conclusions

Because we find there are no genuine issues of material fact as to PRPHA's compliance with resident consultation prior to filing an application for demolition with HUD, we affirm the district court's decision to dismiss Appellants' claim against the Commonwealth defendants and HUD.  We also affirm the dismissal of Appellants' <u>de facto</u> demolition claim.

**<u>Affirmed</u>**.